FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2026 JUN -9  AM 8: 56

OFFICE OF THE CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TODD MICHAEL HEYNE,<br>　　　　　　　　Plaintiff,<br><br>　　　　V.<br><br>ROBERT B. EVNEN, in his official capacity as<br>Nebraska Secretary of State;<br><br><br>THE SPECIAL COUNSEL OF THE UNITED<br>STATES OFFICE OF SPECIAL COUNSEL;<br><br>SCOTT KUPOR, in his official capacity as<br>Director of the Office of Personnel Management<br>of the United States;<br><br>DAVID STEINER, in his official capacity as<br>Postmaster General of the United States,<br><br>　　　　　　　　Defendants. | Case No: 8:26CV261<br><br>COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF<br><br>CLAIM OF UNCONSTITUTIONALITY |

## TABLE OF CONTENTS

**INTRODUCTION**............................................................................... 3

**JURISDICTION AND VENUE**........................................................... 3

**PARTIES**.......................................................................................... 4

**LEGAL AND REGULATORY FRAMEWORK**...................................... 5

    THE FEDERAL HATCH ACT AND ADMINISTRATIVE AUTHORITY...... 5

    NEBRASKA ELECTION LAW AND BALLOT ACCESS.......................... 6

**FACTUAL BACKGROUND**................................................................. 6

**CLAIMS FOR RELIEF**........................................................................ 13

COUNT I – FIRST AMENDMENT (*AS-APPLIED- FEDERAL DEFENDANTS*)......................... 13

COUNT II – FIFTH AMENDMENT
(*DUE PROCESS – VAGUENESS – FEDERAL DEFENDANTS*)................................................ 17

COUNT III – FIFTH AMENDMENT (*UNCONSTITUTIONAL CONDITIONS/ OVERINCLU-
SIVE APPLICATION/APA - FEDERAL DEFENDANTS*)................................................................ 20

COUNT IV – FIRST AMENDMENT (*OVERBREADTH - FEDERAL DEFENDANTS*).............. 23

COUNT V – FIFTH AMENDMENT
(*EQUAL PROTECTION AND DUE PROCESS – FEDERAL DEFENDANTS*)............................. 25

COUNT VI – FIRST AND FIFTH AMENDMENT (*RESTRICTION ON POLITICAL EXPENDI-
TURES AND EQUAL PROTECTION – FEDERAL DEFENDANTS*).......................................... 29

COUNT VII – QUALIFICATIONS CLAUSE
(*ARTICLE I, § 2 – FEDERAL DEFENDANTS*)............................................................................. 31

COUNT VIII – VIOLATION OF FIRST AMENDMENT
(*AS-APPLIED – STATE DEFENDANT EVNEN*)........................................................................... 35

COUNT IX – VIOLATION OF FOURTEENTH AMENDMENT
(*EQUAL PROTECTION- AS-APPLIED STATE DEFENDANT EVNEN*)....................................... 37

COUNT X – FOURTEENTH AMENDMENT- DUE PROCESS
(*ABSENCE OF NOTICE AND VAGUENESS- AS-APPLIED STATE DEFENDANT EVNEN*)..... 41

COUNT XI – JOINT SYSTEMIC BARRIER TO BALLOT ACCESS
(*ANDERSON-BURDICK BALANCING- AS-APPLIED TO ALL DEFENDANTS*)....................... 45

COUNT XII – FIRST AMENDMENT (RIGHT TO PETITION – *FEDERAL DEFENDANTS*)..... 47

COUNT XIII – FIRST AMENDMENT AND ADMINISTRATIVE PROCEDURE ACT
(Unconstitutional Delegation of Partisan Classification to Private Third
Parties and Unlawful Regulatory Expansion of "Partisan Political Office"
– As Applied – Federal Defendants)........................................................................................... 51

COUNT XIV – FIFTH AMENDMENT (VOID FOR VAGUENESS - AS APPLIED)................. 55

## TABLE OF CONTENTS
#### Continued

COUNT XV – FIFTH AMENDMENT AND FIRST AMENDMENT  (*UNCONSTITUTIONAL IRREBUTTABLE PRESUMPTION / AS-APPLIED CHALLENGE TO CANDIDACY PROHIBITION – FEDERAL DEFENDANTS*)................................................................................. 58

**PRAYER FOR RELIEF**............................................................................ 61

I. Declaratory Relief.......................................................................................... 62

II. Administrative Procedure Act Relief........................................................... 67

III. Injunctive Relief........................................................................................... 67

IV. Expedited Relief and General Relief............................................................ 69

Plaintiff, Todd Michael Heyne, brings this action against Defendants and alleges as follows:

## INTRODUCTION

1. This case challenges the constitutionality of the Hatch Act as applied to Plaintiff, a non-policymaking federal employee, who seeks to engage in off-duty political activity, including pursuing ballot access for election to the United States House of Representatives.

2. The Hatch Act, as interpreted and enforced by Defendants, imposes a broad prohibition not only on formal candidacy or candidate for election, but also on preparatory and exploratory activities necessary to qualify for the ballot.

3. As a result, Plaintiff is forced to choose between maintaining his employment and engaging in constitutionally protected political participation.

4. This case challenges the constitutionality of the State of Nebraska's Election Law facially and as applied to Plaintiff, that limits his ballot access for election to the United States House of Representatives.

5. The State's election law restricts ballot access inequitably by favoring political party affiliation and arbitrarily applying deadlines that favor one class of persons over the Plaintiff and similarly situated persons and do not serve the interests of the State as enforced, prohibiting Plaintiff and those similarly situated from becoming a candidate for election.

6. Plaintiff seeks declaratory and injunctive relief to prevent enforcement of the Hatch Act against him in this context.

7. Plaintiff seeks declaratory and injunctive relief to allow access to constitutionally protected political participation as a candidate for election.

## JURISDICTION AND VENUE

8. This action arises under the First, Fifth, and Fourteenth Amendments to the United States Constitution; the Qualifications Clause (Art. I, § 2, cl. 2); and the laws of the United States,

Page 3

including the Hatch Act (5 U.S.C. §§ 7321–7326) and the Civil Rights Act of 1871 (42 U.S.C. § 1983).

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) because this action arises under the Constitution and laws of the United States, including the First, Fifth, and Fourteenth Amendments and the Administrative Procedure Act, 5 U.S.C. § 701 et seq.

10. This Court has the authority to grant declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and Federal Rules of Civil Procedure 57 and 65. This Court is authorized to grant appropriate relief under 5 U.S.C. § 706.

11. Venue is proper in the United States District Court for the District of Nebraska pursuant to 28 U.S.C. § 1391(e) and 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to these claims occurred in this district, and the State Defendant maintains his official office within this district.

## PARTIES

12. Plaintiff Todd Michael Heyne is a resident of the State of Nebraska and a current employee of the United States Postal Service, serving in a non-supervisory, non-policymaking capacity as a rural letter carrier.

13. Defendant Robert B. Evnen is the Secretary of State for the State of Nebraska and is sued in his official capacity. Pursuant to Neb. Rev. Stat. § 32-202, the Secretary of State is the chief election officer for the State of Nebraska and is responsible for the administration and enforcement of the election laws of the State, including the certification of candidates and the oversight of the petition process for ballot access in federal elections.

14. Defendant THE SPECIAL COUNSEL OF THE UNITED STATES OFFICE OF SPECIAL COUNSEL is the head of the U.S. Office of Special Counsel ("OSC"), an independent federal investigative and prosecutorial agency established pursuant to 5 U.S.C. § 1211, with its headquarters located at 1730 M Street NW, Suite 218, Washington, DC 20036. The Special Counsel is sued exclusively in their official capacity. In this capacity, the Special Counsel is

Page 4

the individual vested with ultimate statutory authority for the administration, interpretation, and enforcement of the Hatch Act (5 U.S.C. §§ 7321–7326) and its implementing regulations, including the enforcement actions and advisory opinions challenged herein.

15. Defendant David Steiner is the Postmaster General of the United States and is sued in his official capacity. The United States Postal Service is Plaintiff's employer and is responsible for enforcing employment-related consequences arising from alleged Hatch Act violations.

16. Defendant Scott Kupor is the Director of the Office of Personnel Management of the United States and is sued in his official capacity. The Office of Personnel Management is responsible for administering the federal civil service and promulgating regulations governing the political activity of federal employees, including those implementing the Hatch Act. In that capacity, Defendant oversees the regulatory framework applicable to Plaintiff's employment that is used by the Special Counsel in enforcement.

## LEGAL AND REGULATORY FRAMEWORK

A. THE FEDERAL HATCH ACT AND ADMINISTRATIVE AUTHORITY

17. The Hatch Act, codified at 5 U.S.C. §§ 7321–7326, governs the political activities of federal employees. The Act distinguishes between "Further Restricted" employees and "Less Restricted" employees, such as the Plaintiff.

18. Under 5 U.S.C. § 7323(a)(3), covered employees are prohibited from being a "candidate for election" to a partisan political office.

19. Pursuant to 5 U.S.C. § 7325, the Office of Personnel Management (OPM) is authorized to prescribe regulations necessary to carry out the Act, which are codified at 5 C.F.R. Part 734.

20. The Administrative Procedure Act (APA), 5 U.S.C. § 706, authorizes a reviewing court to hold unlawful and set aside agency actions, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or contrary to constitutional right.

Page 5

## B.  NEBRASKA ELECTION LAW AND BALLOT ACCESS

21. The Qualifications Clause of the U.S. Constitution, Art. I, § 2, cl. 2, sets forth the exclusive qualifications for membership in the U.S. House of Representatives. Neither Congress nor the States may add to these qualifications. *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995).

22. Neb. Rev. Stat. § 32-616 governs the eligibility of individuals to seek office as independent (non-partisan) candidates via petition.

23.  Under Nebraska law, a candidate seeking to run by petition for the General Election must have been "unaffiliated" or "non-partisan" as of March 1 of the election year.

24. Neb. Rev. Stat. § 32-617 establishes the requirements for the circulation and filing of petitions, requiring a specific number of signatures from registered voters to be submitted by August 1.

25. The **Anderson-Burdick** framework requires courts to balance the character and magnitude of the burden a State's election rule imposes on a person's First and Fourteenth Amendment rights against the interests the State contends justify that burden. *Anderson v. Celebrezze*, 460 U.S. 780 (1983).

26. Under 42 U.S.C. § 1983, any person who, under color of State law, subjects a citizen to the deprivation of any rights, privileges, or immunities secured by the Constitution is liable to the party injured in an action at law or suit in equity.

## FACTUAL BACKGROUND

27. Plaintiff is an employee of the United States Postal Service, serving as a rural letter carrier in a non-supervisory, non-policymaking role, and is subject to the restrictions of the Hatch Act. He is a less restricted employee under the Hatch Act and his duties consist of delivering mail along an assigned rural route and performing related operational tasks.

Page 6

28. Plaintiff's position does not involve the exercise of regulatory authority or influence over public policy nor is it a position of authority, policymaking influence, or supervisory control over employees, elections or political processes.

29. Plaintiff changed his party affiliation from Republican to Nonpartisan on April 1, 2026.

30. Plaintiff is considering to engage in off-duty, privately conducted political activity in connection with a potential future candidacy for the United States House of Representatives for Nebraska's 2nd Congressional District as an independent candidate, identified as a "Nonpartisan" candidate under Nebraska election law.

31. Nonpartisan candidates are not affiliated with a political party and may not appear on a partisan primary ballot as a candidate for any partisan office. A nonpartisan voter seeking to vote in a congressional primary must affirmatively request a partisan congressional ballot beyond their default nonpartisan ballot, pursuant to Neb. Rev. Stat. § 32-912(3); moreover, a nonpartisan voter may only request such a ballot from parties that have opened their primary and the Nebraska Republican Party did not open its primary to nonpartisan voters.

32. To qualify as a candidate for election, the Plaintiff would have to do so through the ballot petition process or as a write-in candidate as a nonpartisan candidate.

33. Plaintiff sought information from the State to determine what was required to qualify as a candidate for election. To do so, he must engage in preparatory activities, including gathering signatures, organizing support, and pursuing ballot access in compliance with applicable State election laws.

34. On or about April 2, 2026, Plaintiff contacted the Elections Division of the Nebraska Secretary of State's Office (Exhibit B) to inquire about the requirements for a nonpartisan candidate to access the 2026 General Election ballot for the U.S. House of Representatives via the petition process. Specifically, the Plaintiff wanted to complete the ballot petition form and submit to the Secretary of State for approval which is required before any ballot petition can be circulated.

35. On April 7, 2026, the Secretary of State's Office issued a written determination (Exhibit B) explicitly stating that any sample petitions submitted by Plaintiff to qualify for the ballot would be rejected.

36. The Secretary of State based this rejection on Neb. Rev. Stat. § 32-616, asserting that because Plaintiff was affiliated with the Republican Party on March 1, 2026, he is legally barred from filing as a nonpartisan candidate by petition.

37. The Secretary of State's Office further asserted that Plaintiff "had ballot access" through the partisan primary filing deadline of March 2, 2026.

38. Prior to pursuing a legal remedy to the State's denial of ballot access, Plaintiff reviewed the Hatch Act and its regulatory counterpart to determine the legal ramifications of filing suit against the Secretary of State.

39. Plaintiff reviewed the Hatch Act, specifically the 1993 Reform Amendments, which allow federal employees to take an active part in political management. However, Plaintiff identified a conflict between the statutory language 'candidate for election' and the broader regulatory definitions enforced by the Office of Personnel Management (OPM) and the Office of Special Counsel (OSC). Because the threat of enforcement, including the classification of legal expenditures as 'candidacy', created a chilling effect on his protected expression. Plaintiff sought an advisory opinion from the OSC to ensure compliance.

40. Seeking to remain in full compliance with the Hatch Act, Plaintiff proactively contacted the OSC on April 14, 2026 (Exhibit A) to inquire whether initiating a legal challenge against the Nebraska Secretary of State's ballot access deadlines would be construed as a prohibited 'preliminary' to candidacy.

41. In that request, Plaintiff identified specific proposed activities, including: (a) circulating a non-official support or public interest petition relating to ballot access or public support; (b) engaging in discussions with members of the public regarding a potential candidacy; (c) conducting internal, non-public campaign planning; and (d) initiating or participating in litigation concerning ballot access laws prior to any formal declaration of candidacy.

42. Plaintiff sought guidance as an advisory opinion from the U.S. Office of Special Counsel regarding whether such activities would be permitted while he remains employed. Moreover, the Plaintiff desired to know if when he became a qualified candidate for election on August 1, if he could do so while on Leave Without Pay (LWOP) or on a leave of absence. He asked generally, if he could engage in these activities while on LWOP or on a leave of absence.

43. Plaintiff also sought clarification as to when, if at all, such preparatory activities would constitute "becoming a candidate" for purposes of the regulatory counterpart of the Hatch Act.

44. In response, the OSC issued a broad warning (Exhibit A), stating that 'making expenditures' or 'taking the action necessary under the law of a state to qualify' would be viewed as a violation. By equating the pursuit of judicial clarity with 'candidacy,' this response placed Plaintiff's federal employment at risk should he proceed with his Constitutional challenge.

45. OSC advised Plaintiff that the Hatch Act's prohibition is not only on formal candidacy for partisan political office but also extends beyond formal declaration to include activities that could be construed as being in furtherance of a candidacy such as "preliminaries leading to such announcement" and "any action that can reasonably be construed as evidence that the individual is seeking support" including circulating petitions, organizing support, and preparing for ballot access for election to office.

46. In its correspondence with Plaintiff, the OSC relied on a 1939 Congressional Record entry to assert that the Hatch Act's 'candidate for election' trigger includes 'preliminaries' and 'any act in furtherance of candidacy.'"

47. OSC further advised that activities such as discussing a potential candidacy, engaging in internal campaign planning, undertaking steps related to ballot access, or otherwise engaging in conduct that could be viewed as furthering a campaign may constitute prohibited candidacy-related activity.

48. OSC specifically advised Plaintiff that, while employed by the United States Postal Service, Plaintiff may not engage in such preliminary activities if they are undertaken in connection with a planned candidacy for partisan political office.

Page 9

49. Black's Law Dictionary defines candidate as, "A person who offers himself, or is presented by others, **to be elected** [emphasis added] to an office." *Leonard v. Com., 112 Pa. 607.*

50. Nebraska law, Neb. Rev. Stat. § 32-104, defines 'candidate' broadly as "a registered voter **for whom votes may be cast** at any election and who, either tacitly or expressly, consents to be considered." Under this abstract definition, any registered voter who consents, even "tacitly," to be considered for election satisfies Nebraska's broadest definition of candidacy regardless of whether that person has satisfied any operational prerequisite that would allow votes to be legally cast or counted.

51. As of the date of this filing, the Plaintiff desires to be a candidate for the US House of Representatives for the Second District of Nebraska, but has not consented to receive votes either tacitly or expressly, and can only make that final determination by engaging in the political management activities that the OSC has expressly prohibited the Plaintiff from participating in, thus chilling his exploratory activity.

52. Nebraska law further requires satisfaction of specific operational prerequisites before a § 32-104 candidate may actually receive legally cognizable votes to be counted or be recognized in a general election and thereby become a 'candidate for election' in the operative sense as stated in the Hatch Act. Those prerequisites vary by ballot-access pathway: A) Party Nomination, where a person becomes a candidate for election by completing a filing form and pay the required fee by March 2, to participate in the primary for recognized parties in the State; B) **Petition Ballot Candidate**, where a person becomes a candidate for election by submitting a petition with at least 2,000 signatures of verified voters who reside within the district, and submit the petition for ballot access and pay the required fee by August 1, 2026; or, C) Write-In Candidate, by alternatively and timely filing an affidavit as a write-in candidate and by paying the required fee by October 23, 2026. Prior to those steps, exploratory or preparatory activity does not itself result in ballot placement or the counting of votes.

53. The Federal Election Commission, distinguishes between exploratory activity and candidacy, including regulatory thresholds for when an individual becomes subject to candidate registration and reporting requirements. For example, under federal election regulations, an individ-

Page 10

ual generally is designated a candidate and becomes subject to candidate reporting obligations upon receipt or expenditure of more than $5,000 in contributions or expenditures in connection with an election campaign. As of the date of this filing, Plaintiff's total expenditure in connection with any potential candidacy-related activity is $38.26, the cost of registering two domain names and a campaign email address, which is less than one percent of the FEC's $5,000 threshold for candidate designation.

54. As of the date of this filing, Plaintiff has not filed a candidate committee with the FEC nor exceeded the $5,000 threshold under 11 C.F.R. § 100.3, the federal regulatory definition of Candidate. Furthermore, Plaintiff has not filed a statement of candidacy or paid a filing fee under Neb. Rev. Stat. § 32-606.

55. As a result of this interpretation, Plaintiff faces a credible threat of enforcement, including potential disciplinary action or termination, if he engages in such activities. Plaintiff need not expose himself to actual discipline or termination in order to challenge the constitutionality of the Act.

56. Plaintiff's ability to access the ballot is legally constrained and time-sensitive, which makes the Hatch Act burden immediate and real.

57. The State's assertion that Plaintiff "had ballot access" through the partisan primary filing deadline of March 2, 2026 (¶37), is contradicted by the OSC's Advisory Opinion (Exhibit A); Plaintiff was legally prohibited from exercising that partisan "access" due to his status as a federal employee, which the Federal Defendants interpret as a total ban on partisan candidacy.

58. OSC further advised that the Hatch Act's restrictions on candidacy-related activity would apply even if Plaintiff were to take an extended leave of absence or enter leave-without-pay status while pursuing such activity.

59. Consequently, the Secretary of State's enforcement of the "March 1" party-affiliation deadline, in conjunction with the Federal Defendants' enforcement of the Hatch Act, creates a total and unconstitutional barrier to Plaintiff's ballot access that he cannot overcome regardless of his actions.

Page 11

60. These activities are time-sensitive due to fixed statutory deadlines governing ballot access.

61. At the same time, applicable election laws require timely action in order to qualify for ballot access, creating a situation in which Plaintiff cannot both comply with the Hatch Act as interpreted and meaningfully pursue candidacy required by the State.

62. In order to address the timeliness requirements necessary to adjudicate this case and comply with Nebraska's August 1 petition deadline, Plaintiff secured the domain names todd4congress.com and toddforcongress.com and the email address todd@toddforcongress.com on May 22, 2026, at a total cost of $38.26 (Exhibit C). Both domains are currently parked on GoDaddy.com with no active campaign content or personally identifiable information (PII) and the email address todd@toddforcongress.com has not been used for any campaign-related communication, in preparation to facilitate the online collection of ballot-access petition signatures, if this Court grants relief to do so. Plaintiff has made no other expenditures in connection with any candidacy-related activity and has not filed any candidate form, paid any filing fee, or submitted any petition signatures as of the date of this filing.

63. Plaintiff's employment with the United States Postal Service differs materially from the traditional federal civil service structure that existed at the time of the Hatch Act's enactment and early judicial interpretation.

64. The Postal Reorganization Act transformed the former Post Office Department into a financially and operationally independent establishment.

65. As a result, Plaintiff's position is operational in nature and does not implicate the policymaking, regulatory, or discretionary authority that historically justified heightened restrictions on political activity.

66. The Hatch Act Reform Amendments of 1993 (Public Law 103-94) allowed less restricted federal employees to take an active part in political management or political campaigns during off-duty hours.

67. The Hatch Act Modernization Act of 2012 (Public Law 112-230) modernized penalties by replacing mandatory removal with a range of disciplinary actions as well as allowed non-federal workers whose income was not wholly tied to federal funding to run for partisan office.

68. Plaintiff has suffered and continues to suffer an injury in fact, including the chilling of constitutionally protected speech and association, that is concrete, particularized, and imminent. This injury is fairly traceable to Defendants' interpretation and enforcement of the Hatch Act, including the advisory guidance provided by the Office of Special Counsel, and is redressable by the declaratory and injunctive relief sought herein.

69. Further, the Plaintiff also suffered and continues to suffer an injury in fact, including ballot access, association, and equal protection that is concrete, particularized, and imminent. This injury is traceable to Defendant's enforcement of State law that prohibits equal protection and due process as enforced by the Secretary of State of Nebraska, and is redressable by the declaratory and injunctive relief sought herein.

## CLAIMS FOR RELIEF

COUNT I – FIRST AMENDMENT (*AS-APPLIED- FEDERAL DEFENDANTS*)

70. Plaintiff realleges and incorporates by reference all preceding paragraphs.

71. This claim arises under the First Amendment to the United States Constitution for the unconstitutional abridgment of Plaintiff's rights to free speech, freedom of association, and the right to engage in petition circulation for the purpose of attaining ballot access.

72. Plaintiff seeks to engage in off-duty, privately conducted political activity in connection with a potential future candidacy for the United States House of Representatives for Nebraska's 2nd Congressional District.

73. Plaintiff's intended conduct consists of preliminary, exploratory, and privately conducted political activity including the circulation of petitions for ballot placement under Neb. Rev. Stat. § 32-617 occurring prior to the formal statutory triggers of candidacy set forth in Neb. Rev. Stat. §§ 32-606 and 32-608.

Page 13

74. As applied to Plaintiff, the Hatch Act's prohibition on being a "candidate for election" is being enforced against this pre-candidacy speech and association. Specifically, by characterizing the preliminary act of circulating petitions under Neb. Rev. Stat. § 32-617 as prohibited candidacy, Defendants are imposing an unconstitutional burden on Plaintiff's First Amendment **Right to Petition** which is the only legal mechanism available for Plaintiff to secure a position on the ballot. By regulating political expression at a stage where no legal candidacy exists under state law or federal law, Defendants have unconstitutionally expanded the Act's reach into protected First Amendment activity.

75. Furthermore, Defendants' interpretation burdens not only the Plaintiff's Right to Petition, but also the reciprocal First Amendment rights of the voters in Nebraska's 2nd Congressional District to associate with the candidate of their choice. The process of circulating a petition is, by definition, a request for voter approval; until and unless that approval is secured via the requisite number of signatures and the fulfillment of the formal statutory triggers of candidacy set forth in Neb. Rev. Stat. §§ 32-606 and 32-608, the Plaintiff remains a **petitioner**, not a "candidate for election." Because the attainment of formal candidacy is a mere possibility contingent upon voter consent, Defendants' attempt to regulate this stage of political activity as a finalized "election" status is legally and constitutionally premature.

76. The OSC's interpretation violates the rule against surplusage by rendering the statutory phrase "for election" in 5 U.S.C. § 7323 meaningless, effectively expanding the prohibition not authorized by Congress to "pre-candidacy" political management activities.

77. The government's asserted interests in efficiency, neutrality, and preventing coercion are not materially implicated by Plaintiff's off-duty, non-supervisory conduct. As applied to Plaintiff, the categorical restriction is not narrowly tailored to serve a sufficiently important governmental interest and suppresses protected speech beyond what is necessary to achieve those interests.

78. Plaintiff's intended activities, which does not involve the use of official authority, would be undertaken entirely in a private capacity, outside official duty hours, without the use of government resources, and without invoking any official authority. Nor does it involve influence

in interactions with subordinates in a political capacity, or any conduct that would compromise the integrity or neutrality of governmental operations.

79. Based on OSC's guidance, Plaintiff reasonably understands that engaging in the proposed activities described above would subject Plaintiff to investigation, discipline, or other adverse employment consequences.

80. As a result of this credible threat of enforcement, Plaintiff has refrained from engaging in constitutionally protected political speech, association, and participation in the electoral process.

81. Plaintiff's intended course of conduct involves two distinct stages. First, prior to attaining the status of a "candidate for election," a formal recognition under applicable state law or federal campaign finance law, Plaintiff seeks to engage in exploratory and preparatory political activity while remaining actively employed. Second, upon becoming a legally and officially recognized candidate for whom votes may be cast and counted, Plaintiff intends to continue such political activity only while off-duty and/or on leave-without-pay or extended leave status, thereby removing himself from active service. Defendants' interpretation unconstitutionally prohibits both stages of activity, failing to account for the materially different governmental interests implicated at each stage.

82. The overinclusive nature of Defendants' interpretation is further demonstrated by the fact that the same restrictions apply even if Plaintiff were to take leave without pay or otherwise remove himself from active service upon qualifying as a candidate for election by the State. In such circumstances, the government's asserted interests in efficiency, neutrality, and the prevention of coercion are substantially diminished, yet the restriction remains categorical. At a minimum, the Constitution requires that any restriction on Plaintiff's candidacy be limited to circumstances in which those governmental interests are actually implicated.

83. The application of the Hatch Act in this context is distinguishable from the conduct addressed in *United States Civil Service Commission v. National Association of Letter Carriers*, which involved active partisan political management and campaigning by federal employees

Page 15

in circumstances implicating concerns of coercion, patronage, and institutional partisan influence. Unlike the employees in *Letter Carriers*, Plaintiff does not seek to engage in active partisan political management or campaigning while holding a position of governmental influence. Instead, Plaintiff seeks only to engage in preliminary, off-duty political activity that does not implicate risks of coercion, patronage, or institutional partisan control.

84. The governmental interests recognized in cases such as *United States Civil Service Commission v. National Association of Letter Carriers* arose in the context of a traditional civil service structure in which employees exercised governmental authority, policymaking discretion, or supervisory control. By contrast, the Postal Reorganization Act transformed the former Post Office Department into a financially and operationally independent establishment, thereby diminishing the strength of the government's asserted interests as applied to Plaintiff's non-supervisory, non-policymaking position.

85. Defendants' interpretation, relying on an antiquated 1939 standard of "preliminaries", extends the prohibition to encompass private discussions and exploratory conduct occurring well before Plaintiff achieves the statutory status of a "candidate for election."

86. The use of a Congressional floor speech as a purposive approach to a Golden rule interpretation, flies in the face of the plain meaning of the Act, and is in direct contradiction to the Act's amendments in 1993 and 2012. In effect, the OPM's regulatory application and the OSC's enforcement claws back these Congressional amendments to the prohibitions that existed in 1939, prohibitions the Act only presently applies to further restricted employees of the Government, not as applied to Plaintiff.

87. Plaintiff alleges that such pre-candidacy, off-duty political activity constitutes core political speech and association protected by the First Amendment, and that Defendants' interpretation of the Hatch Act burdens such activity at a stage preceding formal electoral participation.

88. The burden imposed on Plaintiff is particularly severe in light of time-sensitive election deadlines, including requirements for ballot access, which, if missed, will foreclose Plaintiff's ability to participate in the electoral process during the relevant election cycle.

89. Absent relief from this Court, Plaintiff will be forced to choose between continued public employment and the exercise of fundamental First Amendment freedoms.

90. The loss of First Amendment freedoms, even for minimal periods of time, constitutes irreparable harm as a matter of law. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Here that harm is particularly acute because the August 1, 2026 petition deadline creates a fixed, immovable window within which Plaintiff must exercise his First Amendment rights or forfeit the opportunity entirely for the 2026 election cycle.

91. Plaintiff is entitled to a declaration that the Hatch Act, 5 U.S.C. § 7323(a)(3), as applied to prohibit Plaintiff's off-duty, privately conducted, non-coercive exploratory political activity and petition circulation occurring prior to the attainment of formal "candidate for election" status under Nebraska law, violates the First Amendment to the United States Constitution; and to an injunction prohibiting Defendants from enforcing the Hatch Act or its implementing regulations against Plaintiff based on: (1) exploratory political activity conducted off-duty and without use of official authority or government resources; (2) circulation of ballot-access petitions pursuant to Neb. Rev. Stat. § 32-617 prior to formal qualification as a candidate for election under applicable state law; and (3) any preparatory or organizational activity occurring prior to the attainment of formal candidate status under Neb. Rev. Stat. §§ 32-606, 32-608, and 32-617.

COUNT II – FIFTH AMENDMENT
(*DUE PROCESS – VAGUENESS – FEDERAL DEFENDANTS*)

92. Plaintiff realleges and incorporates by reference all preceding paragraphs.

93. This claim arises under the Due Process Clause of the Fifth Amendment to the United States Constitution for the violation of Plaintiff's constitutional right to due process for clarity and certainty in the law through the enforcement of unconstitutionally vague and indeterminate standards that fail to delineate with sufficient precision the boundary between permitted political activity and prohibited candidacy-related conduct.

94. As implemented through applicable regulations, including 5 C.F.R. Part 734, and as interpreted and enforced by Defendants, the Hatch Act fails to provide a clear and objective standard for determining when lawful political expression becomes prohibited candidacy-related activity.

95. Defendants have interpreted the Hatch Act to prohibit not only formal candidacy for partisan political office, but also "preliminaries leading to such announcement" and "any action that can reasonably be construed as evidence that the individual is seeking support" (Exhibit A) for election to office. These indefinite concepts fail to provide the fair notice required by the Fifth Amendment's Due Process Clause. *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972). This standard turns on the subjective judgment of enforcement officials rather than objective criteria, thereby failing to provide clear notice of what conduct is prohibited and inviting arbitrary and inconsistent enforcement.

96. These standards lack clear, objective boundaries, and fail to provide ordinary persons with fair notice of what conduct is prohibited, including but not limited to discussions of potential candidacy, exploratory political activity, organizational planning, advocacy, and expenditures related to political expression.

97. As a result, a federal employee of ordinary intelligence cannot determine in advance when off-duty, privately conducted political activity, including speech, association, or expenditures, crosses the line into prohibited candidacy-related conduct. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

98. The absence of clear standards invites arbitrary and inconsistent enforcement, as determinations of what may be "reasonably construed" as seeking support depend on subjective interpretation by enforcement authorities.

99. As applied to Plaintiff, this vagueness is particularly acute. *Connally v. General Construction Co.*, 269 U.S. 385 (1926). Plaintiff sought guidance from the U.S. Office of Special Counsel regarding specific proposed activities (Exhibit A) and was advised in terms that failed to provide a clear or predictable boundary between permissible and prohibited conduct.

Page 18

100. Based on Defendants' interpretation, Plaintiff reasonably understands that engaging in a wide range of protected political speech and association could subject Plaintiff to investigation, discipline, or other adverse employment consequences.

101. This uncertainty has caused Plaintiff to refrain from engaging in constitutionally protected activity, thereby chilling Plaintiff's exercise of First Amendment rights.

102. The challenged provisions and their interpretation are therefore unconstitutionally vague as applied to Plaintiff.

103. On information and belief, the challenged provisions and their interpretation broadly chill protected political expression by similarly situated federal employees due to the absence of clear and objective standards governing prohibited candidacy-related activity. As further detailed in Count IV, the breadth of this chilling effect also independently supports a facial overbreadth challenge under the First Amendment.

104. The vagueness of Defendants' interpretive standard causes ongoing and irreparable harm to Plaintiff for which there is no adequate remedy of law. Unlike concrete prohibitions, vague standards cause injury not only through enforcement but through the chilling effect of uncertainty itself; Plaintiff cannot know which activities are permitted and therefore must refrain from all of them to avoid the risk of termination. The loss of First Amendment freedoms caused by this chilling effect, even for minimal periods of time, constitutes irreparable harm as a matter of law. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). This harm is particularly acute given the August 1, 2026 petition deadline, which the uncertainty itself is causing Plaintiff to miss.

105. Plaintiff is entitled to a declaration that the Hatch Act, 5 U.S.C. § 7323(a)(3), and its implementing regulations at 5 C.F.R. Part 734, as interpreted and enforced by Defendants through standards including "preliminaries leading to such announcement" and conduct that may be "reasonably construed" as seeking support for election, are unconstitutionally vague as applied to Plaintiff under the Fifth Amendment's Due Process Clause because they fail to delineate with sufficient precision the boundary between permitted political activity and prohibited candidacy-related conduct, thereby failing to provide the clarity and certainty the Due

Process Clause of the Fifth Amendment requires; and to an injunction prohibiting Defendants from enforcing any interpretation of the Hatch Act against Plaintiff that relies on subjective or indeterminate standards rather than the objective statutory threshold of formal "candidate for election" status under applicable state law.

COUNT III – FIFTH AMENDMENT (*UNCONSTITUTIONAL CONDITIONS / OVERINCLU-SIVE APPLICATION/APA - FEDERAL DEFENDANTS*)

106.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

107.    This claim arises under the Due Process Clause of the Fifth Amendment to the United States Constitution and the Unconstitutional Conditions Doctrine for the violation of Plaintiff's constitutional right to engage in core political activity free from government coercion, as Defendants condition Plaintiff's continued federal employment on the relinquishment of fundamental First Amendment liberties without sufficient justification narrowly tailored to the government's asserted interests.

108.    This action challenges an unconstitutional application of the Hatch Act. While the government claims an interest in promoting "political neutrality" among its employees, the current regulatory enforcement has achieved the opposite: it has created a regime of institutional censorship. By suppressing non-policymaking, non-supervisory employees from engaging in preliminary, exploratory political activity, the government is not preventing partisanship, it is actively preventing the exercise of fundamental First Amendment rights. This censorship serves no legitimate governmental interest, as it suppresses protected speech that has no capacity to implicate the government's interests in efficiency or political neutrality. *United States Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548 (1973) and *Broadrick v. Oklahoma*, 413 U.S. 601 (1973).

109.    The Hatch Act, as applied to Plaintiff and similarly situated non-supervisory, non-policy-making federal employees, conditions continued public employment on the relinquishment of the right to engage in core political activity, including candidacy for elective office.

Page 20

110.    Although the government may impose certain restrictions on the political activity of its employees to promote efficiency, prevent coercion, and maintain political neutrality, those restrictions must bear a sufficient relationship to the interests they are intended to serve.

111.    Defendants' interpretation of the Hatch Act imposes a categorical prohibition on candidacy for partisan political office without meaningfully distinguishing between employees who possess policymaking authority or supervisory control and those, like Plaintiff, who do not.

112.    The plain language of the 1993 Hatch Act Reform Amendments must control over conflicting legislative history or agency interpretation under 5 U.S.C. § 706.  The OSC's interpretation is arbitrary, capricious, and not in accordance with law because it ignores the plain language.  The OSC cannot use selective quotes from floor debates to "claw back" the clear statutory safe harbor Congress provided for political management and expression.

113.    Plaintiff, as a non-supervisory, non-policymaking employee, lacks authority over agency policy, personnel, or decision-making and does not occupy a position capable of exerting coercive or partisan influence over others.

114.    As applied to Plaintiff, the prohibition on candidacy extends beyond what is necessary to advance the government's asserted interests and is not narrowly tailored to those interests.

115.    The unconstitutional nature of this condition is further demonstrated by its categorical application to all covered employees, regardless of their role, authority, or ability to implicate the government's asserted interests.  The Act prohibits candidacy for partisan political office even for non-supervisory, non-policymaking employees who lack the capacity to exert coercive or partisan influence.  In such circumstances, the government's interests in efficiency, neutrality, and the prevention of coercion do not justify conditioning continued employment on the surrender of the right to seek elective office.  To the extent the Act imposes this categorical restriction without regard to the nature of the employee's position or the presence of the governmental interests asserted, it operates in an overinclusive manner that burdens a substantial amount of protected political activity.

Page 21

116.    Defendants have imposed an **Unconstitutional Condition** on Plaintiff's federal employment. By interpreting the Hatch Act to prohibit preliminary, pre-candidacy speech and the Right to Petition, Defendants are requiring Plaintiff to forfeit his fundamental First Amendment liberties as a condition of maintaining his employment. Under the Fifth Amendment's Due Process Clause, the government may not deny a benefit (employment) to a person on a basis that infringes his constitutionally protected interests.

117.    The practical effect is to present Plaintiff with a constitutionally impermissible *Hobson's Choice* to either forfeit a hard-earned career in public service or abandon the fundamental right to participate in the democratic process.

118.    Plaintiff has no adequate remedy at law. The constitutional injury here is structural and ongoing. Plaintiff is currently forced to choose between continued employment and the exercise of fundamental constitutional rights, and no monetary award after the fact can restore the lost opportunity to participate in the 2026 electoral cycle or remedy the daily suppression of protected political activity caused by this unconstitutional condition.

119.    The loss of constitutional freedoms resulting from an unconstitutional condition on federal employment constitutes irreparable harm as a matter of law. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). This harm operates on two levels simultaneously: Plaintiff suffers the daily coercive pressure of choosing between his livelihood and his constitutional rights, and he suffers the irreversible loss of petition-gathering time that cannot be recovered after the August 1, 2026 deadline passes.

120.    Plaintiff is entitled to a declaration that the Hatch Act, 5 U.S.C. § 7323(a)(3), as interpreted and enforced by Defendants to condition Plaintiff's continued federal employment on the relinquishment of his right to engage in preliminary, pre-candidacy political speech, petition circulation, and electoral participation, violates the Unconstitutional Conditions Doctrine under the Fifth Amendment's Due Process Clause as applied to non-supervisory, non-policy-making federal employees who lack the capacity to exert coercive or partisan influence; and to an injunction prohibiting Defendants from conditioning Plaintiff's continued federal em-

ployment on the surrender of his First Amendment right to engage in off-duty, privately conducted, pre-candidacy political activity, petition circulation pursuant to Neb. Rev. Stat. § 32-617, and litigation undertaken to protect these constitutional rights.

121. In the alternative, to the extent the Court concludes that the challenged provisions cannot be meaningfully limited through an as-applied construction consistent with this Count, Plaintiff incorporates by reference the facial overbreadth challenge set forth in Count IV, which independently establishes that the Hatch Act as interpreted and enforced by Defendants is unconstitutional on its face because it prohibits a substantial amount of protected political speech and association relative to its legitimate sweep.

COUNT IV – FIRST AMENDMENT (*OVERBREADTH - FEDERAL DEFENDANTS*)

122. Plaintiff realleges and incorporates by reference all preceding paragraphs.

123. This claim arises under the First Amendment of the United States Constitution for the deprivation of free speech rights.

124. As implemented through applicable regulations, including 5 C.F.R. Part 734, and as interpreted and enforced by Defendants, the Hatch Act's candidacy prohibition has been extended far beyond its plain statutory text into a broad range of pre-candidacy political speech and association.

125. The OSC has omitted the adjectival prepositional phrase "for election" from the plain reading of the text of the Act in its operative definition of "candidate." By omitting "for election" and redefining "candidate", it has effectively revived the 1939 restrictions under a different name and reconquered territory that Congress gave back to "Less Restricted" federal employees in 1993. This interpretation extends the Act's prohibitions to pre-candidacy activity by non-supervisory employees who neither utilize government resources nor occupy positions of coercive authority; conduct that does not implicate the government's asserted interest in civil service neutrality.

126. Under *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973), a law is facially invalid for overbreadth where the unconstitutional applications are real and substantial in relation to the

Page 23

statute's plainly legitimate sweep. The OSC's interpretation extends to all federal employees engaged in any exploratory political activity: a universe of constitutionally protected conduct vastly larger than the narrow category of formal candidacy for partisan office that Congress sought to regulate.

127.   The Hatch Act as interpreted fails to distinguish between the "active part in political management" explicitly permitted by 5 U.S.C. § 7323 and formal candidacy for election. By stretching the definition of "candidate" to encompass discussions of potential candidacy, exploratory political activity, organizational planning, advocacy, and expenditures related to political expression, Defendants' interpretation sweeps within its prohibitions a vast amount of core political speech wholly unrelated to the government's interest in a neutral civil service, including off-duty, privately conducted expression that does not involve the use of official authority or governmental resources and that does not meaningfully implicate the government's asserted interests in preventing coercion, maintaining political neutrality, or avoiding misuse of official authority.

128.   The challenged provisions and their interpretation lack clear limiting principles that confine their application to conduct that meaningfully implicates those governmental interests. The ratio of unconstitutional-to-legitimate applications of the "preliminaries" standard is therefore substantial, warranting facial relief under *Broadrick*.

129.   By extending the prohibition to "preliminaries" and treating expenditures made in the exercise of pre-candidacy political activity as evidence of prohibited candidacy, the OSC's interpretation unconstitutionally sweeps in protected political speech that occurs before any statutory status of "candidate for election" is achieved under Neb. Rev. Stat. § 32-606.

130.   The overbreadth of the challenged provisions extends beyond Plaintiff and chills protected political speech and association by a substantial number of similarly situated federal employees who refrain from exploratory political activity due to the risk that such activity will later be characterized as prohibited candidacy-related conduct. Because the Act's prohibitions turn on whether conduct may be "reasonably construed" as seeking support for election, individuals cannot determine whether ordinary political expression will later be charac-

Page 24

terized as evidence of candidacy and must therefore refrain from a wide range of lawful political expression to avoid potential enforcement, resulting in a significant and ongoing chilling effect on core First Amendment activity (As further detailed in Count II, the "reasonably construed" standard also independently violates the Fifth Amendment's Due Process Clause as unconstitutionally vague).

131.    Accordingly, the Hatch Act and its implementing regulations, as interpreted and enforced by Defendants, are unconstitutionally overbroad in violation of the First Amendment.

132.    The overbreadth of Defendants' interpretation causes ongoing and irreparable harm to Plaintiff and similarly situated federal employees for which there is no adequate remedy at law.  The chilling effect of an unconstitutionally overbroad standard suppresses protected political speech not only through enforcement but through the uncertainty of its reach; federal employees must refrain from all exploratory political activity to avoid the risk that any specific activity will be characterized as prohibited candidacy.  The loss of First Amendment freedoms, even for minimal periods of time, constitutes irreparable harm as a matter of law. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

133.    Because the challenged provisions and their implementing regulations are unconstitutionally overbroad on their face, Plaintiff is entitled to declaratory relief establishing their facial invalidity as applied to the broad category of pre-candidacy political activity they impermissibly reach, and to injunctive relief prohibiting Defendants from enforcing any interpretation of "candidate" that extends beyond the achievement of formal candidate status under applicable state law as defined by Neb. Rev. Stat. §§ 32-606, 32-608, and 32-617.

COUNT V – FIFTH AMENDMENT
(*EQUAL PROTECTION AND DUE PROCESS – FEDERAL DEFENDANTS*)

134.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

135.    This claim arises under the Fifth Amendment to the United States Constitution for the violation of Plaintiff's equal protection and due process rights through the OSC's constitutionally unauthorized displacement of Nebraska's sovereign authority to define the legal prerequisites for candidacy in congressional elections.

Page 25

136.   Article I, Section 4 of the Constitution grants state legislatures the authority to regulate the 'Times, Places and Manner' of congressional elections. This constitutional allocation of authority reflects a deliberate structural choice: the States, not federal agencies, are the designated sovereigns for determining the mechanics of congressional elections, including the legal requirements that transform a private citizen into a "candidate for election."

137.   Nebraska has exercised this constitutional authority by establishing objective, verifiable criteria for attaining "candidate for election" status. Under Neb. Rev. Stat. § 32-606 and § 32-608, a person becomes a **candidate for election** to federal office only upon filing the required candidate filing form and paying the mandatory filing fee prior to the applicable deadline; or, for independent petition candidates, upon satisfying the petition requirements of Neb. Rev. Stat. § 32-617 by August 1 of the election year. These are the constitutionally sanctioned benchmarks for candidacy in Nebraska congressional elections.

138.   By substituting its own subjective standard, prohibiting conduct that may be "reasonably construed" as seeking support for election, for Nebraska's objective statutory definition, the OSC has arrogated to itself a determination that the Constitution assigns to the State. The federal agency's definition of "candidate" is not merely broader than Nebraska's; it is constitutionally unauthorized, as it displaces the state's sovereign exercise of its Elections Clause authority and imposes a federal overlay that the Constitution does not permit.

139.   Because Plaintiff has not satisfied any of Nebraska's constitutionally sanctioned candidacy prerequisites, as established in the Factual Background, he has not attained the status of "candidate for election" that the Hatch Act's prohibition requires.

140.   Plaintiff did not file a candidate filing form as required by Neb. Rev. Stat. § 32-606.

141.   Plaintiff did not pay the mandatory filing fee required by Neb. Rev. Stat. § 32-608.

142.   Because Plaintiff has not met the requirements of § 32-606 and § 32-608, Plaintiff therefore has not attained formal candidate status under Nebraska election law and is not yet eligible to receive legally cognizable votes in a congressional election.

Page 26

143. If the Hatch Act meant to restrict *any* political activity, it would have just said "candidate." By adding "for election," it specifically narrowed the restriction to people who are qualified by the State to receive votes. The statutory interpretation by OPM and enforced by OSC violates the principle, the Rule against Surplusage, thus rendering "for election" meaningless, as applied to the Plaintiff.

144. The Hatch Act does not prohibit "candidacy" in the abstract; it prohibits being a "candidate for election." Under the Rule Against Surplusage, the words "for election" must be given independent meaning. A "candidate for election" is a specific legal status achieved only upon meeting the formal filing and eligibility requirements of the State. By interpreting the Act to prohibit preliminary "candidacy" activities that fall short of "candidate for election" status, Defendants have unconstitutionally collapsed the distinction between permitted political management and prohibited formal candidacy

145. The Fifth Amendment requires that laws provide sufficient clarity and certainty to delineate with precision the boundary between permitted and prohibited conduct. Defendants interpret the term "candidate" so broadly that it undermines the statutory distinction between a "candidate for election" and permissible participation in "political management" or "political campaigns," rendering the statutory **safe harbor** for political management activity illusory and the Act as applied constitutionally inadequate. As further detailed in Count II, Defendants' reliance on subjective concepts including intent and preparatory expenditures to define candidacy independently violates the Fifth Amendment's Due Process Clause as unconstitutionally vague. As further detailed in Count VI, this interpretation also creates an unconstitutional wealth-based barrier to political participation through the treatment of pre-candidacy exploratory expenditures as evidence of prohibited candidacy.

146. The OSC's interpretation creates an irrational and unconstitutional classification in violation of the equal protection component of the Fifth Amendment's Due Process Clause. By treating Plaintiff as a "candidate for election" when Nebraska law, the constitutionally designated authority on that question, does not, the OSC has drawn a classification that has no rational basis. The classification distinguishes between those whom a federal agency subjec-

Page 27

tively construes as candidates and those whom the State has objectively designated as candidates through the satisfaction of specific statutory prerequisites. This distinction bears no rational relationship to the government's asserted interest in civil service neutrality; the government's neutrality interest is not implicated by whether a federal enforcement agency subjectively construes someone as a candidate, but by whether that person actually holds candidate status as determined by the constitutionally sanctioned authority. As further developed in Count VI, this irrational classification also independently creates an unconstitutional wealth-based barrier to electoral participation.

147. Plaintiff has no adequate remedy at law for the ongoing constitutional deprivation caused by the OSC's unauthorized displacement of Nebraska's sovereign candidacy determination. The daily suppression of constitutionally protected pre-candidacy political activity and the irrational classification of Plaintiff as a candidate when Nebraska's constitutionally designated authority has not so recognized him, constitutes irreparable harm for which retrospective relief cannot compensate. The loss of Fifth Amendment equal protection and due process protections, even for minimal periods of time, constitutes irreparable harm as a matter of law. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

148. Plaintiff is entitled to declaratory relief establishing that the OSC's interpretation of "candidate for election" is constitutionally unauthorized under the Elections Clause of Article I, Section 4, as it displaces Nebraska's sovereign authority to define the legal prerequisites for candidacy in congressional elections; that such interpretation violates the equal protection component of the Fifth Amendment by creating an irrational classification that contradicts the objective candidate status determination made by the constitutionally designated authority; that the Act as interpreted fails to provide the clear standards required by the Fifth Amendment's Due Process Clause by rendering the statutory safe harbor for political management activity illusory; as further detailed in Count VI, Defendants' interpretation also independently violates the First and Fifth Amendments by creating an unconstitutional wealth-based barrier to political participation through the treatment of pre-candidacy exploratory expenditures as evidence of prohibited candidacy; that Defendants are enjoined from applying any definition of 'candidate for election' that extends beyond the formal candidacy requirements established by Nebraska law under Neb. Rev. Stat. §§ 32-606, 32-608, and 32-617;

Page 28

and from treating any conduct occurring prior to Plaintiff's satisfaction of those prerequisites as evidence that Plaintiff has consented, tacitly or expressly, to candidacy within the meaning of Neb. Rev. Stat. § 32-104.

## COUNT VI – FIRST AND FIFTH AMENDMENT (*RESTRICTION ON POLITICAL EXPENDITURES AND EQUAL PROTECTION – FEDERAL DEFENDANTS*)

149. Plaintiff realleges and incorporates by reference all preceding paragraphs.

150. This claim arises under the First Amendment to the United States Constitution and the equal protection component of the Fifth Amendment's Due Process Clause for the violation of Plaintiff's constitutional rights to political speech, association, and equal participation in the electoral process through Defendants' treatment of pre-candidacy exploratory expenditures as prima facie evidence of prohibited candidacy — a treatment that constitutes a prior restraint on protected political speech and creates an unconstitutional wealth-based barrier that reserves the right to seek federal office for those with sufficient independent means to forfeit federal employment.

151. Defendants' interpretation creates an unconstitutional wealth-based barrier to political participation. By equating the expenditure of personal or exploratory funds with "candidacy," Defendants ensure that only those with significant independent wealth — who can afford the immediate loss of their federal livelihood — may engage in the preliminary stages of the electoral process, effectively reserving the right to seek federal office for wealthy or high-ranking individuals. As further developed in Count V, this wealth-based classification independently violates the equal protection component of the Fifth Amendment.

152. The plain text of the Hatch Act, 5 U.S.C. § 7323, contains no mention of "expenditures," or "financial outlays" as triggers for the prohibition on candidacy or political management. However, it does prohibit soliciting contributions 5 U.S.C. § 7323(a)(2). Under the canon of *expressio unius est exclusio alterius*, Congress's explicit regulation of contributions while remaining silent on expenditures reflects a deliberate legislative choice to exclude expenditures from the Act's financial prohibitions.

Page 29

153. Despite this statutory silence, Defendants' regulatory framework and internal interpretations (including 5 C.F.R. § 734.101) treat the expenditure of funds for exploratory political activity as *prima facie* evidence of prohibited candidacy.

154. For a non-wealthy federal employee, the mere act of spending money to research a district, print exploratory materials, or travel to meet with potential supporters becomes a "terminable offense." This forces a classification where the wealthy may "explore" and the non-wealthy must remain "silent" or face unemployment.

155. Furthermore, under well-established Supreme Court precedent, including *Buckley v. Valeo*, the right to make expenditures in the pursuit of political expression is a form of core speech protected by the First Amendment. Prior restraints on protected speech carry a heavy presumption of unconstitutionality that the government bears the burden of overcoming. *Near v. Minnesota*, 283 U.S. 697, 713 (1931). Defendants' interpretation imposes precisely such a restraint, it does not punish completed political expenditures after the fact but threatens termination for the act of making any expenditure connected to exploratory political activity, thereby suppressing protected political speech and association before it occurs and chilling constitutionally protected deliberation about whether to seek office at all.

156. By imposing this restriction, Defendants have effectively added a "wealth qualification" to the right to run for office, which is not authorized by the Hatch Act and is not narrowly tailored to any legitimate government interest in maintaining a neutral civil service.

157. This "expenditure trigger" is particularly egregious where, as here, the spending occurs prior to any formal status as a "candidate for election" under state law. It punishes the *preparation* for speech as if it were the *act* of candidacy itself.

158. Accordingly, treating Plaintiff's $38.26 investment in dormant digital infrastructure as prima facie evidence of prohibited candidacy — while providing no such barrier to non-federal citizens or wealthy federal employees who can afford to resign — violates the First Amendment's protection of political expenditures as core speech and the Fifth Amendment's guarantee of equal protection.

159.   Plaintiff has no adequate remedy at law for the ongoing suppression of his First Amendment right to make political expenditures and his Fifth Amendment equal protection right to participate in the electoral process on equal terms with non-federal citizens. As of the date of this filing, Plaintiff's total expenditure in connection with any candidacy-related activity is $38.26; the cost of registering two domain names and an email address, currently parked and dormant, with no active campaign content published, no solicitation of support or contributions, and no campaign-related communications sent or received; which is less than one percent of the FEC's $5,000 threshold for candidate designation under 11 C.F.R. § 100.3. The threat of termination for this nominal expenditure demonstrates the constitutional inadequacy of Defendants' expenditure trigger and constitutes ongoing irreparable harm for which retrospective relief cannot compensate. The loss of First and Fifth Amendment freedoms, even for minimal periods of time, constitutes irreparable harm as a matter of law. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

160.   Plaintiff is entitled to a declaration that: (1) the Hatch Act, 5 U.S.C. § 7323, contains no textual authorization for treating personal or exploratory political expenditures as evidence of prohibited candidacy, and that Defendants' regulatory framework at 5 C.F.R. § 734.101 exceeds statutory authority to the extent it treats such expenditures as candidacy evidence; (2) treating pre-candidacy exploratory expenditures, including Plaintiff's total expenditure of $38.26 for domain names todd4congress.com and toddforcongress.com and the email address todd@toddforcongress.com, as *prima facie* evidence of prohibited candidacy creates an unconstitutional wealth-based barrier to political participation in violation of the First and Fifth Amendments; and (3) the filing and prosecution of this constitutional lawsuit does not constitute a prohibited Hatch Act expenditure or evidence of unlawful political activity; and to an injunction prohibiting Defendants from treating any expenditure made prior to Plaintiff's achievement of formal "candidate for election" status under Nebraska law as defined by Neb. Rev. Stat. §§ 32-606, 32-608, and 32-617, as evidence of prohibited candidacy under the Hatch Act or its implementing regulations.

COUNT VII – QUALIFICATIONS CLAUSE (*ARTICLE I, § 2 – FEDERAL DEFENDANTS*)

161.   Plaintiff realleges and incorporates by reference all preceding paragraphs.

Page 31

162.    Article I, Section 2, Clause 2 of the United States Constitution establishes the exclusive qualifications for service in the United States House of Representatives.

163.    Under *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, (827) (1995), the qualifications for federal office set forth in the Constitution are exclusive and may not be supplemented by Congress or the States through additional statutory qualifications or disqualifications.

164.    The Hatch Act, 5 U.S.C. § 7323(a)(3), prohibits certain federal employees from being "a candidate for election" in partisan political office.  Surrounding provisions of the Act regulate **specific conduct**, including the use of official authority to interfere with elections, solicitation of political contributions, and political activity while on duty. See 5 U.S.C. § 7323(a)(1), (2), and (4).

165.    Properly construed according to its text and structure, § 7323(a)(3) prohibits only actual candidacy for election and does not prohibit generalized political discussion, exploratory political activity, issue advocacy, campaign planning, or preliminary efforts undertaken before an individual attains the legal status of a candidate for election under applicable state election law.

166.    The breadth of the 1939 Act's political activity restrictions was historically justified by the absence of institutional mechanisms to police specific employee misconduct.  At the time of the decisions in *United Public Workers v. Mitchell*, 330 U.S. 75 (1947), and *CSC v. Letter Carriers*, 413 U.S. 548 (1973), no independent investigatory body existed to enforce conduct-based prohibitions against federal employees.  The Inspector General Act of 1978, Pub. L. 95-452, established permanent, independent offices (OIG) specifically empowered to investigate and remediate employee misconduct, including coercion, misuse of authority, and partisan political abuse.  The Hatch Act Reform Amendments of 1993 narrowed the prior restrictions by parsing formal candidacy from the broader category of active political management, restoring to less-restricted employees the right to take an active part in political campaigns while maintaining the prohibition on formal candidacy.  The OSC's current interpretation, however, claws back those amendments by treating pre-candidacy exploratory activity as prohibited candidacy, effectively restoring the 1939 Civil Service Board's expansive interpretation that the 1993 Congress expressly rejected.

Page 32

167. Article I, Section 4 of the United States Constitution delegates to the States authority over the times, places, and manner of conducting elections for the United States House of Representatives. Pursuant to that authority, Nebraska law establishes the procedures and qualifications necessary for an individual to attain the legal status of a candidate eligible to appear on the ballot or otherwise receive legally cognizable and countable votes in an election.

168. Under Nebraska election law, an individual does not become a legally cognizable "candidate for election" unless and until the individual satisfies the statutory requirements necessary to qualify for ballot access or otherwise become eligible to receive legally countable votes.

169. Prior exploratory political activity occurring before satisfaction of Nebraska's ballot-access requirements does not constitute "candidate for election" within the ordinary legal meaning of that term.

170. Defendants, through interpretation and enforcement of the Hatch Act, expanded the statutory phrase "candidate for election" beyond its plain meaning by construing preliminary exploratory political activity as prohibited candidacy under 5 U.S.C. § 7323(a)(3).

171. By extending the Hatch Act's candidacy prohibition to exploratory and preparatory political activity occurring before Plaintiff attained legal candidate status under Nebraska law, Defendants exceeded the statute's lawful scope and impermissibly burdened Plaintiff's rights under Article I, Section 2 of the United States Constitution.

172. As applied to Plaintiff, by prohibiting Plaintiff from engaging in lawful exploratory steps toward candidacy without first forfeiting his federal employment, Defendants have effectively imposed an additional, extra-constitutional qualification for office in the United States House of Representatives beyond those exclusively enumerated in Article I, Section 2, Clause 2: that a candidate must "**Not Be a Federal Government Employee.**"

173. The government possesses legitimate interests in maintaining the integrity and neutrality of the civil service and may regulate specific conduct by federal employees, including coercion, misuse of official authority, and solicitation of political contributions. However, ex-

Page 33

tending the statutory prohibition on being a "candidate for election" to encompass exploratory political activity occurring before legal candidacy exists is not narrowly tailored to those interests.

174.    Defendants' interpretation of § 7323(a)(3) transforms a conduct-based restriction into a status-based disqualification tied solely to federal employment status.

175.    Alternatively, if 5 U.S.C. § 7323(a)(3) is construed to prohibit exploratory political activity preceding legally recognized candidacy under applicable state election law, then the statute itself exceeds constitutional limits by imposing an extra-constitutional qualification for service in the United States House of Representatives in violation of Article I, Section 2.

176.    By prohibiting federal employees from undertaking preliminary political activity prior to attaining legal candidate status under state election law, the Hatch Act, as interpreted and enforced by Defendants, operates as a categorical disqualification based upon federal employment status rather than regulation of specific misconduct.

177.    Section 7323(a)(3) cannot constitutionally sustain Defendants' enforcement actions under any interpretation. If construed narrowly to apply only to formal legal candidacy, as established in Count V, the constitutionally sanctioned definition under applicable state law, Defendants' enforcement against Plaintiff's exploratory, pre-candidacy activity exceeds their statutory authority.   Conversely, if construed broadly to encompass such preliminary political expression, the statute itself imposes an unconstitutional, extra-textual qualification for congressional office, namely, that a candidate must "Not Be A Federal Government Employee" in violation of Article I, Section 2 of the United States Constitution and the holding of *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 827 (1995).

178.    Plaintiff has no adequate remedy at law for the ongoing deprivation of his right to seek federal office free from unconstitutional qualifications. The imposition of an extra-constitutional employment-based disqualification on Plaintiff's right to engage in pre-candidacy political activity, occurring daily as the August 1 petition deadline approaches, constitutes irreparable harm that cannot be remedied after the electoral opportunity has been foreclosed. The deprivation of rights protected by the Qualifications Clause, even for minimal periods of

time, constitutes irreparable harm as a matter of law. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

179.   Plaintiff is entitled to a declaration that Defendants' interpretation and enforcement of 5 U.S.C. § 7323(a)(3) against Plaintiff's pre-candidacy and exploratory political activity impermissibly imposes an additional qualification for service in the United States House of Representatives, to "Not Be A Federal Government Employee" beyond those exclusively enumerated in Article I, Section 2, Clause 2, in violation of *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (827) (1995); and to an injunction prohibiting Defendants from enforcing § 7323(a)(3) against Plaintiff's pre-candidacy political activity, petition circulation, and litigation undertaken to protect these constitutional rights as well as Plaintiff's right to seek election to the United States House of Representatives under Article I, Section 2 of the United States Constitution.

## COUNT VIII – VIOLATION OF FIRST AMENDMENT
*(AS-APPLIED – STATE DEFENDANT EVNEN)*

180.   Plaintiff realleges and incorporates by reference all preceding paragraphs.

181.   This claim arises under the First Amendment to the United States Constitution, as applied to the State of Nebraska through the Fourteenth Amendment, for the violation of Plaintiff's rights to political speech, association, and ballot access through Defendant Evnen's enforcement of Neb. Rev. Stat. § 32-616's March 1 party-disaffiliation deadline against Plaintiff.

182.   The First Amendment protects the rights of individuals to engage in political speech and association, including the right to run for public office and the corresponding right of voters to associate for political purposes and the right of qualified voters to cast their votes effectively. The First Amendment protects the rights of individuals to associate for political purposes. These rights are fundamental and include the right of a candidate to seek ballot access and the corresponding right of voters to have a meaningful choice at the polls. See *Anderson v. Celebrezze*, 460 U.S. 780 (1983).

183.   Defendant's enforcement of Neb. Rev. Stat. § 32-616 imposes a severe burden on Plaintiff's ability to engage in core political speech and association by preventing Plaintiff from

Page 35

qualifying for placement on the ballot and for voters to have a meaningful choice at the polls. Under the **Anderson-Burdick** framework, when a state election law imposes a "severe" restriction on the rights of candidates and voters, the restriction must be narrowly tailored to advance a compelling state interest.

184.   Defendant's enforcement of **Neb. Rev. Stat. § 32-616** imposes a severe, insurmountable burden on Plaintiff's First Amendment rights. By mandating a party-disaffiliation deadline of **March 1** for the General Election, the State effectively requires federal employees, who are prohibited by the Hatch Act from engaging in "preliminary" partisan candidacy activities, to make a career-ending choice months before the independent filing window closes (August 1).

185.   The "March 1" deadline creates an unconstitutional "dead zone." Because the Federal Defendants (OSC/USPS) interpret the Hatch Act to prohibit Plaintiff from running as a partisan candidate while employed, and the State Defendant prohibits Plaintiff from running as an independent candidate because he was still affiliated with a party on March 1, the Plaintiff is **categorically excluded** from the ballot.

186.   This exclusion is not a reasonable, nondiscriminatory restriction. It is an arbitrary barrier that fails to account for the unique legal disabilities imposed upon federal employees, thereby disenfranchising a specific class of citizens: non-policymaking federal employees who were registered with a political party on March 1 and whose ability to change registration thereafter and run for office is constrained by concurrent federal employment law, and the voters who wish to support them.

187.   Any asserted state interest in "ballot stability" or "preventing factionalism" is not served by the exclusion of a non-policymaking letter carrier. Such interests can be achieved through less restrictive means, such as tolling the disaffiliation deadline for federal employees or allowing a waiver where federal law prevents a partisan primary run.

188.   The restriction operates to exclude Plaintiff from the electoral process based on timing requirements that are not narrowly tailored to serve a compelling state interest. The State's asserted interests in orderly elections and administrative efficiency can be achieved through less restrictive means that do not foreclose ballot access. Accordingly, **Neb. Rev. Stat. § 32-**

**616**, as applied to this Plaintiff, is not narrowly tailored, serves no compelling interest that outweighs the total foreclosure of ballot access, and violates the First Amendment to the United States Constitution.

189.    The enforcement of Neb. Rev. Stat. § 32-616 against Plaintiff causes ongoing and irreparable harm to Plaintiff's First Amendment rights for which there is no adequate remedy at law.  The loss of First Amendment freedoms of political speech, association, and ballot access, even for minimal periods of time, constitutes irreparable harm as a matter of law. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  The August 1, 2026 petition deadline makes this harm particularly acute; each day of delay permanently forecloses signature-gathering time that cannot be recovered after the deadline passes.

190.    As further detailed in Count IX, Defendant's enforcement of § 32-616 independently violates the Equal Protection Clause of the Fourteenth Amendment by drawing arbitrary, discriminatory distinctions between Plaintiff and similarly situated candidates without rational justification.

191.    Plaintiff is entitled to a declaration that Neb. Rev. Stat. § 32-616, as applied to Plaintiff under the circumstances described herein, violates the First Amendment to the United States Constitution by imposing a severe, insurmountable burden on Plaintiff's right to ballot access that is not narrowly tailored to any compelling state interest; and to an injunction prohibiting Defendant Evnen from enforcing the March 1 party-disaffiliation deadline against Plaintiff, with equitable tolling of that deadline to account for the federal employment constraints that prevented Plaintiff from acting earlier and the pendency of this litigation.

## COUNT IX – VIOLATION OF FOURTEENTH AMENDMENT
*(EQUAL PROTECTION – AS-APPLIED - STATE DEFENDANT EVNEN)*

192.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

193.    This claim arises under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution for the violation of Plaintiff's right to equal treatment in ballot access through Defendant Evnen's enforcement of Neb. Rev. Stat. § 32-616's March 1 party-

disaffiliation deadline, which draws arbitrary and discriminatory distinctions between Plaintiff and similarly situated candidates without rational justification.

194.   The Fourteenth Amendment guarantees all citizens the equal protection of the laws, ensuring that the State may not treat similarly situated individuals differently regarding the exercise of fundamental rights, including the right to seek ballot access and the right to vote, without a compelling justification.

195.   Nebraska's statutory scheme creates a disparate and discriminatory classification system for ballot access.  Under **Neb. Rev. Stat. § 32-616**, the State treats individuals who seek to run by petition differently based solely on their party affiliation status as of an arbitrary date: March 1.

196.   This deadline is not a "strict" administrative necessity, as evidenced by the State's own statutory exceptions which accommodate other candidates much later in the cycle:

(a) **New Party Exception:** Under Neb. Rev. Stat. § 32-612, while a change of party affiliation after the first Friday in December is generally ineffective for candidacy purposes, an exception exists for candidates joining a newly formed political party that has completed the petition process under § 32-716.  Under § 32-716, a new party may obtain general election ballot position, bypassing the primary entirely, by filing its formation petitions with the Secretary of State by July 15 of the election year.  A candidate affiliated with such a new party may therefore change party affiliation after the first Friday in December deadline and still appear on the general election ballot, having bypassed the primary process altogether.  This exception demonstrates that Nebraska explicitly accommodates candidates who enter the general election without any primary participation.  However, Nebraska imposes a significantly more restrictive timeline on independent petition candidates — requiring them to have already been unaffiliated from all political parties as of March 1 under § 32-616 — while granting newly forming party candidates structural alignment flexibility all the way up to the July 15 petition deadline.  Nebraska offers no principled justification for this 136-day disparity in treatment between two categories of candidates who are identically situated in the relevant respect: both seek general election ballot access without primary participation;

(b) **The Vacancy Exception:** Under **Neb. Rev. Stat. § 32-616(2)**, the State allows vacancies on the general election ballot to be filled by registered voters and those lost in the primary election (Neb. Rev. Stat. § 32-616 (2)), effectively allowing individuals to enter the race months after the March 1 "cutoff"; And,

(c) **Administrative Inconsistency:** The State allows voters to change their party affiliation online as late as the third Friday before the primary online, or later in person (May 1, 2026, for the current cycle), and the third Friday preceding the general election (which is October 16).

197.    These exceptions prove that the State can, and does, accommodate ballot access and affiliation changes deep into the spring and summer. Yet, the State arbitrarily denies this flexibility to independent petition candidates like the Plaintiff, who changed his affiliation to Non-Partisan on April 1, 2026.

198.    Under *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), the Equal Protection Clause protects individuals from arbitrary government action even absent membership in a protected class. There is no rational basis for the State to recognize an April 1 party-switch for the purpose of voting or filling a vacancy on the ballot while simultaneously declaring that same switch 'too late' for an independent petitioner; precisely the irrational, differential treatment *Olech* prohibits. This creates an unconstitutional **"Class of One"** discrimination against the Plaintiff.

199.    Nebraska's March 1 disaffiliation deadline is "unreasonably far in advance" of the general election. *Nader v. Brewer*, 531 F.3d 1028, 1035 (9th Cir. 2008). The deadline requires independent petition candidates to finalize their party status months before partisan candidates are even nominated, creating an asymmetry that disadvantages independent candidates relative to partisan ones without rational justification. As the Supreme Court recognized in *Anderson v. Celebrezze*, 460 U.S. 780, 790 (1983), early deadlines are constitutionally problematic because "the candidates and the issues simply do not remain static" over the months between the deadline and the election.

Page 39

200.    This deadline imposes an unconstitutional burden under the Anderson-Burdick balancing framework. For Plaintiff specifically, the March 1 deadline created an insurmountable barrier, federal law prohibited him from taking partisan candidacy steps before that date, and state law penalized him for not having done so. The combined effect is total exclusion from the ballot regardless of his diligence or intent, a burden no legitimate state interest can justify.

201.    The State cannot justify these arbitrary distinctions by reference to its asserted interest in preventing party manipulation (i.e., ensuring that independents are genuine independents rather than failed primary candidates switching tracks). Plaintiff was not a failed primary candidate. He was a federal employee subject to Hatch Act restrictions that actively prevented him from accessing the Republican primary. The anti-manipulation rationale simply does not apply to his circumstances, and a classification whose justifying rationale is absent from the facts of the case fails rational basis review.

202.    Because this classification severely burdens a fundamental right, ballot access and political association, it is subject to strict scrutiny and must be narrowly tailored to advance a compelling state interest. Defendants cannot satisfy that standard. Alternatively, even under rational basis review, the classification fails because its internal contradictions, accommodating identical conduct for some categories of candidates while arbitrarily denying accommodation to Plaintiff, demonstrate that the distinction bears no rational relationship to any legitimate state interest

203.    The enforcement of Neb. Rev. Stat. § 32-616 against Plaintiff causes ongoing and irreparable harm to Plaintiff's Fourteenth Amendment equal protection rights for which there is no adequate remedy at law. The deprivation of equal protection in the context of ballot access and political participation constitutes irreparable harm that cannot be remedied after the August 1, 2026 petition deadline has passed or the 2026 general election has occurred.

204.    As detailed in Count VIII, Defendant's enforcement of § 32-616 independently violates the First Amendment. The equal protection violation established herein compounds and reinforces that First Amendment injury by demonstrating that the burden imposed on Plaintiff lacks any rational, let alone compelling, justification.

Page 40

205.   Plaintiff is entitled to a declaration that Neb. Rev. Stat. § 32-616, as applied to Plaintiff under the circumstances described herein, violates the Equal Protection Clause of the Fourteenth Amendment by: (1) drawing arbitrary, discriminatory distinctions between Plaintiff and similarly situated candidates based solely on party affiliation status as of an arbitrary date; (2) singling out Plaintiff for differential treatment of his April 1 registration change in violation of the Class of One doctrine under *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000); and (3) failing rational basis review due to the statute's own internal contradictions; and to an injunction prohibiting Defendant Evnen from enforcing the March 1 disaffiliation deadline against Plaintiff, with equitable tolling of applicable deadlines to account for the federal employment constraints that prevented Plaintiff from acting earlier and the pendency of this litigation.

## COUNT X — FOURTEENTH AMENDMENT- DUE PROCESS
*(ABSENCE OF NOTICE AND VAGUENESS- AS-APPLIED - STATE DEFENDANT EVNEN)*

206.   Plaintiff realleges and incorporates by reference all preceding paragraphs.

207.   This claim arises under the Due Process Clause of the Fourteenth Amendment to the United States Constitution for two related but distinct violations: first, the complete absence of any notice to non-policymaking federal employees regarding how to satisfy Nebraska's March 1 party-disaffiliation deadline while simultaneously complying with the Hatch Act as interpreted by the OSC; and second, the vagueness of the combined federal-state regulatory framework as applied to this specific class of citizens, which fails to provide sufficient clarity and certainty to allow meaningful compliance even for those who are aware the problem exists.

208.   Nebraska's statute, Neb. Rev. Stat. § 32-616, provides clear notice to ordinary citizens regarding the March 1 party-disaffiliation deadline; if you were registered with a party on March 1, you cannot petition as an independent. That clarity, however, extends only to citizens who are free to act on it. For non-policymaking federal employees whose ability to take partisan candidacy steps before March 1 was legally constrained by the Hatch Act as interpreted by the OSC, the statute provides zero notice, not vague notice, but no notice at all.

Page 41

Nebraska's statute is entirely silent regarding this class of citizens. It provides no exception, no waiver mechanism, no alternative compliance pathway, and no guidance whatsoever for federal employees caught between Nebraska's March 1 requirement and the Hatch Act's prohibition on the preliminary activities that would ordinarily precede a registration change made in anticipation of independent candidacy.

209. The complete absence of notice is not a theoretical concern, it is documented. Plaintiff proactively sought guidance from the U.S. Office of Special Counsel regarding how to navigate both regimes simultaneously. The OSC's advisory communication, attached as Exhibit A, advised Plaintiff what was prohibited but provided zero guidance on how to satisfy Nebraska's March 1 deadline while remaining Hatch Act compliant. No compliance pathway was identified, because none exists. Neither Nebraska law, nor OPM regulations, nor the OSC's advisory guidance contemplates the specific situation of a federal employee who cannot take the partisan candidacy steps that would ordinarily precede a March 1 registration change without risking termination of federal employment.

210. As established in the claims against Federal Defendants, the interplay between the Hatch Act and Nebraska's March 1 deadline creates an unconstitutional regulatory trap. The Federal Defendants' interpretation of the Hatch Act prohibited Plaintiff from engaging in the partisan candidacy activities that would ordinarily precede changing his registration from Republican to Nonpartisan in anticipation of independent candidacy. Nebraska's statute then penalized Plaintiff for not having changed his registration before March 1; a change he could not meaningfully make before that date because the federal regime had already foreclosed the purpose such a change would have served. The two regimes together produce a result that neither contemplates and that neither address: the complete categorical exclusion of an identifiable class of citizens from ballot access with no notice that the exclusion exists and no guidance on how to avoid it.

211. To the extent any guidance exists through the intersection of Nebraska law and the Hatch Act, it is constitutionally inadequate under the vagueness doctrine. A law is void for vagueness if it fails to provide a person of ordinary intelligence fair notice of what is required or if it is so indeterminate that it authorizes arbitrary and discriminatory enforcement. *Grayned v.*

Page 42

*City of Rockford*, 408 U.S. 104, 108-09 (1972); *Connally v. General Construction Co.*, 269 U.S. 385 (1926). The combined regulatory framework here satisfies both prongs. A non-policymaking federal employee of ordinary intelligence who consults Nebraska's statute, the Hatch Act, OPM's regulations, and the OSC's advisory guidance cannot determine a compliance pathway, because none is provided. And the absence of any defined compliance pathway means enforcement is necessarily arbitrary: the State can apply the March 1 deadline to categorically exclude federal employees from ballot access without any principled basis for distinguishing those who could have complied from those who could not.

212. The statutory framework is void for vagueness and internally inconsistent. While the State claims that Plaintiff "had ballot access" via the partisan primary (ending March 2), that "access" was a legal fiction. Federal law as interpreted by the OSC prohibited Plaintiff from exercising that access while employed. By the time the nonpartisan petition window opened, the State retrospectively declared Plaintiff ineligible based on his status on March 1. A statute that offers access that federal law makes impossible to exercise, and then uses the failure to exercise that impossible access as the basis for categorical exclusion, provides no meaningful notice of any kind.

213. This creates a system where it is legally impossible for a non-policymaking federal employee to know when or how to successfully transition to a nonpartisan candidacy without risking their livelihood or facing immediate disqualification. The Catch-22 is complete: comply with the Hatch Act and miss Nebraska's March 1 deadline; comply with Nebraska's March 1 deadline and violate the Hatch Act. No guidance from either sovereign identifies a path through this contradiction because no path exists.

214. The State's enforcement is arbitrary and capricious. The Secretary of State's Office issued a definitive rejection of Plaintiff's potential petitions (Exhibit B) based on a restrictive interpretation of § 32-616 that ignores the contradictory pathways allowed for new-party candidates and vacancy-fillers, as detailed in Count IX. The same State that accommodates later affiliation changes for other categories of candidates categorically refuses any accommodation for the specific class of citizens, non-policymaking federal employees, for whom Nebraska's deadline is constitutionally impossible to satisfy as a practical matter.

Page 43

215. Accordingly, Neb. Rev. Stat. § 32-616, as applied to Plaintiff and similarly situated non-policymaking federal employees, violates the Due Process Clause of the Fourteenth Amendment on two independent grounds: first, it provides this class of citizens with zero notice regarding how to satisfy the March 1 deadline while simultaneously complying with the Hatch Act; and second, to the extent any guidance exists through the combined regulatory framework, it is so vague and indeterminate as to provide no constitutionally adequate standard for compliance or enforcement.

216. Plaintiff has no adequate remedy at law for the ongoing deprivation of his Fourteenth Amendment due process rights. The complete absence of any compliance pathway, combined with the vagueness of the combined regulatory framework, is itself causing Plaintiff to miss the August 1, 2026 petition deadline, an irreversible harm that cannot be remedied after the electoral opportunity has been foreclosed. The deprivation of due process rights, even for minimal periods of time, constitutes irreparable harm as a matter of law. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

217. Plaintiff is entitled to a declaration that Neb. Rev. Stat. § 32-616, as applied to Plaintiff under the circumstances described herein, violates the Due Process Clause of the Fourteenth Amendment by: (1) providing zero notice to non-policymaking federal employees regarding how to satisfy the March 1 party-disaffiliation deadline while simultaneously complying with the Hatch Act as interpreted by the OSC, there being no compliance pathway identified in Nebraska law, OPM regulations, or OSC guidance; and (2) operating in a manner so vague and indeterminate as applied to this class of citizens, producing a categorical Catch-22 that no amount of diligence can resolve, that it fails to provide the clarity and certainty the Due Process Clause requires; and to an injunction prohibiting Defendant Evnen from enforcing § 32-616's March 1 disaffiliation deadline against Plaintiff, with equitable tolling of that deadline to account for the federal employment constraints that prevented Plaintiff from acting earlier and the pendency of this litigation.

Page 44

COUNT XI – JOINT SYSTEMIC BARRIER TO BALLOT ACCESS
(*ANDERSON-BURDICK BALANCING – AS-APPLIED TO ALL DEFENDANTS*)

218.  Plaintiff realleges and incorporates by reference all preceding paragraphs.

219.  This claim arises under the First Amendment to the United States Constitution, as applied to the State of Nebraska through the Fourteenth Amendment, and the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments, for the violation of Plaintiff's fundamental rights to ballot access and political participation through the combined, overlapping enforcement actions of Federal and State Defendants, which together create an unconstitutional, insurmountable barrier to ballot access that neither sovereign could impose independently.

220.  The Plaintiff alleges that the combined enforcement actions of Federal and State Defendants create an independent and additional constitutional violation under the balancing framework established in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992).

221.  The burden imposed on Plaintiff is **severe**, as the overlapping enforcement of the Hatch Act (by Federal Defendants) and the party-affiliation deadline (by the State Defendant) results in the effective exclusion of Plaintiff from meaningful access to the 2026 general election ballot.

222.  The Federal Defendants' interpretation of the Hatch Act prohibits Plaintiff from seeking a partisan nomination while employed, while the State Defendant's rigid application of **Neb. Rev. Stat. § 32-616** prohibits Plaintiff from seeking a nonpartisan nomination by petition because he was still affiliated with a party on March 1.

223.  This creates an unconstitutional "pincer" or "dead zone" where a non-policymaking federal employee is logically and legally barred from ever accessing the ballot as an independent candidate, regardless of their diligence or intent. The Plaintiff is subjected to mutually reinforcing legal restrictions that make compliance with both regulatory schemes impossible within the relevant election timeline.

224.    The State and Federal interests in administrative efficiency, election integrity, and work-place neutrality, while legitimate in the abstract, are insufficient to justify a total foreclosure of a citizen's right to seek federal office. The severe burden at issue arises from the interaction of federal and state regulatory timelines rather than from any demonstrated risk of corruption, coercion, or administrative disorder. A burden of this magnitude requires more than abstract governmental interests to sustain it.

225.    These interests can be achieved through less restrictive means that do not result in total exclusion. The overlapping operation of the federal and state regulatory schemes produces a cumulative constitutional burden that neither sovereign could impose directly. By refusing to provide reasonable accommodations necessary to reconcile the conflicting regulatory time-lines, the Federal Defendants and State Defendant collectively impose an unconstitutional barrier to meaningful ballot access. Such accommodations include, but are not limited to, tolling the State's disaffiliation deadline for federal employees or the Federal Defendants providing a "safe harbor" for employees seeking to comply with state-mandated petition timelines.

226.    As further detailed in Count VII, this joint exclusion also independently violates the Qualifications Clause of Article I, Section 2 by effectively imposing an extra-constitutional qualification, that a candidate must "Not Be A Federal Government Employee," beyond those exclusively enumerated in the Constitution.

227.    The combined enforcement of the Hatch Act by the Federal Defendants and Neb. Rev. Stat. § 32-616 by the State Defendant imposes an undue and unconstitutional burden on Plaintiff's rights to ballot access, political association, and electoral participation, and on the rights of voters in Nebraska's 2nd Congressional District to have a meaningful choice at the polls. The State Defendant's rigid application of the March 1 deadline, without any accommodation for the unique legal disability imposed on Plaintiff by the Federal Defendants' Hatch Act interpretation, renders the State an effective participant in a joint constitutional deprivation for which no legitimate governmental interest provides adequate justification.

228.   Plaintiff has no adequate remedy at law for the joint deprivation of his constitutional rights by the combined enforcement actions of Federal and State Defendants. Neither sovereign alone has created this harm, it is the product of their interaction, and neither sovereign's unilateral action can remedy it. Only this Court can address the constitutional void created by the combined operation of both regimes. The total foreclosure of ballot access constitutes irreparable harm that cannot be remedied after the August 1, 2026 petition deadline or the 2026 general election. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

229.   Plaintiff is entitled to a declaration that the combined, overlapping enforcement of the Hatch Act by the Federal Defendants and Neb. Rev. Stat. § 32-616 by the State Defendant creates an unconstitutional, insurmountable barrier to ballot access under the ***Anderson-Burdick*** framework that categorically excludes non-policymaking federal employees from meaningful participation in the electoral process regardless of their diligence or intent; and to an injunction directing the Federal Defendants and State Defendant to provide the accommodations necessary to give Plaintiff a meaningful opportunity to seek ballot access, including equitable tolling of the State's March 1 disaffiliation deadline and a federal safe harbor from Hatch Act enforcement for petition-related activities conducted in compliance with Nebraska's ballot access requirements and to order such additional equitable relief as is necessary to ensure that the combined operation of the federal and state regulatory schemes does not categorically foreclose Plaintiff's constitutional right to seek ballot access during the 2026 general election cycle.

## COUNT XII – FIRST AMENDMENT (*RIGHT TO PETITION – FEDERAL DEFENDANTS*)

230.   Plaintiff incorporates by reference all preceding paragraphs.

231.   This claim arises under the Petition Clause of the First Amendment to the United States Constitution for the violation of Plaintiff's right to petition the Government for a redress of grievances in two distinct but related forms: first, the right to circulate petitions to qualify for

Page 47

ballot access under Nebraska law; and second, the right of access to the courts to seek judicial clarification of Plaintiff's constitutional rights; both of which are currently suppressed by Defendants' interpretation and enforcement of the Hatch Act.

232. The First Amendment protects the right of citizens "to petition the Government for a redress of grievances." This right encompasses two distinct but related protections implicated here: first, the right to circulate petitions to qualify for ballot access, which the Supreme Court has recognized as core political speech deserving the highest constitutional protection, *Meyer v. Grant*, 486 U.S. 414, 422 (1988); *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182 (1999); and second, the right of access to the courts to seek redress of constitutional grievances, *Bill Johnson's Restaurants v. NLRB*, 461 U.S. 731, 741 (1983); *BE & K Construction Co. v. NLRB*, 536 U.S. 516, 524 (2002); *Borough of Duryea v. Guarnieri*, 564 U.S. 379 (2011).

233. Nebraska law requires independent candidates to qualify for the ballot via a petition process pursuant to Neb. Rev. Stat. § 32-617. The circulation of these petitions, including preparatory steps directly related to lawful petition circulation and ballot qualification, is a protected exercise of the First Amendment Right to Petition.

234. By interpreting the Hatch Act to prohibit the initiation of the petition process, including the exploratory steps required to begin such a process, Defendants' interpretation operates as a pre-enforcement restriction that chills and suppresses Plaintiff's exercise of protected petitioning activity before Plaintiff may lawfully participate in the ballot-access process. Prior restraints on protected speech and petition activity carry a heavy presumption of unconstitutionality that the government bears the burden of overcoming. *Near v. Minnesota*, 283 U.S. 697, 713 (1931). Unlike subsequent punishment, a prior restraint suppresses constitutionally protected activity before it occurs, prohibiting Plaintiff from taking the first step toward ballot qualification regardless of the content or effect of that activity.

235. The maintenance and operation of a campaign website designed to facilitate the collection of ballot-access petition signatures pursuant to Neb. Rev. Stat. § 32-617 constitutes protected petitioning activity under the First Amendment, *Meyer v. Grant*, 486 U.S. 414, 422 (1988); *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182 (1999). By interpreting

Page 48

the Hatch Act to prohibit or penalize the maintenance of such a website as a 'preliminary' to prohibited candidacy or as a prohibited political expenditure, Defendants impose a prior restraint on Plaintiff's First Amendment right to petition that is not narrowly tailored to any legitimate governmental interest and finds no basis in the plain text of 5 U.S.C. § 7323(a)(3). The government cannot condition federal employment on the surrender of the right to maintain the digital infrastructure necessary to exercise the constitutionally protected right to petition for ballot access.

236.    The OSC's advisory communication to Plaintiff, attached as Exhibit A, specifically identified litigation-related activity as potential evidence of prohibited candidacy under the Hatch Act.  By threatening adverse employment consequences for filing and prosecuting this lawsuit to seek judicial clarification of Plaintiff's constitutional rights, Defendants have imposed an unconstitutional burden on Plaintiff's right of access to the courts, a right independently protected by the First Amendment's Petition Clause. *Bill Johnson's Restaurants v. NLRB*, 461 U.S. 731, 741 (1983); *BE & K Construction Co. v. NLRB*, 536 U.S. 516, 524 (2002).  Defendants may not treat Plaintiff's invocation of judicial process to seek clarification of constitutional rights as evidence of prohibited candidacy or unlawful political activity.

237.    The government cannot condition federal employment on the total surrender of the Right to Petition in either of its protected forms, whether directed toward qualifying for federal office through the ballot petition process or toward seeking judicial clarity on constitutional protections. *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013); *Rust v. Sullivan*, 500 U.S. 173 (1991).  The choice imposed on Plaintiff, surrender your right to petition for ballot access and your right to petition the courts, or lose your livelihood, is precisely the unconstitutional condition these cases prohibit.

238.    The combined effect of these restrictions, threatened enforcement actions, and unconstitutional conditions is a comprehensive chilling effect on Plaintiff's Right to Petition in both its forms.  Plaintiff cannot circulate ballot petitions without risking termination.  He cannot maintain the digital infrastructure necessary to facilitate petition circulation without risking termination.  He cannot file and prosecute this lawsuit without the OSC potentially treating

Page 49

the litigation itself as evidence of prohibited candidacy. This chilling effect is not hypothetical; it is documented in the OSC's written advisory opinion attached as Exhibit A and in the Secretary of State's written rejection attached as Exhibit B.

239.  Plaintiff has no adequate remedy at law for the ongoing suppression of his First Amendment Right to Petition in both its forms. The loss of the right to petition, whether for ballot access or for judicial redress, even for minimal periods of time, constitutes irreparable harm as a matter of law. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The August 1, 2026 petition deadline makes this harm particularly acute — each day that Plaintiff cannot circulate petitions without risking termination permanently forecloses signature-gathering time that cannot be recovered.

240.  Plaintiff is entitled to a declaration that the maintenance of passive digital infrastructure designed to facilitate lawful petition circulation to gather signatures pursuant to Neb. Rev. Stat. § 32-617, specifically, the domain names todd4congress.com and toddforcongress.com, and the email address todd@toddforcongress.com currently parked and dormant, constitutes protected petitioning activity under the First Amendment and does not constitute a prohibited "preliminary" step to candidacy, a prohibited political expenditure, or unlawful political activity under the Hatch Act. Plaintiff is further entitled to an injunction prohibiting Defendants from treating such website maintenance and operation as evidence of prohibited candidacy or as grounds for any investigative, disciplinary, or adverse employment action against Plaintiff.

241.  Plaintiff is entitled to a declaration that:

(1) the circulation of ballot-access petitions pursuant to Neb. Rev. Stat. § 32-617, including all preparatory and exploratory steps necessary to initiate that process, constitutes protected petitioning activity under the First Amendment that may not be prohibited or penalized by the Hatch Act or its implementing regulations;

(2) the maintenance and operation of a campaign website designed to facilitate the collection of ballot-access petition signatures, including specifically the domain names todd4con-

Page 50

gress.com and toddforcongress.com and the email address *todd@toddforcongress.com*, currently parked and dormant with no active campaign content published, no solicitation of support or contributions, and no campaign-related communications sent or received, constitutes protected petitioning activity under the First Amendment and does not constitute a prohibited "preliminary" to candidacy, a prohibited political expenditure, or unlawful political activity under the Hatch Act or its implementing regulations; and

(3) the filing and prosecution of this lawsuit to protect Plaintiff's constitutional rights does not constitute a prohibited Hatch Act expenditure, a prohibited "preliminary" to candidacy, or evidence of unlawful political activity under the Hatch Act or its implementing regulations; and to an injunction prohibiting Defendants from:

(a) taking any investigative, disciplinary, or adverse employment action against Plaintiff based on his circulation of ballot-access petitions pursuant to Neb. Rev. Stat. § 32-617 or any preparatory or exploratory steps related thereto;

(b) treating the maintenance or future activation of the domain names todd4congress.com and toddforcongress.com and the email address *todd@toddforcongress.com* as evidence of prohibited candidacy or as grounds for any investigative, disciplinary, or adverse employment action against Plaintiff; and

(c) treating the filing, prosecution, or any aspect of this litigation as a prohibited Hatch Act expenditure, a prohibited "preliminary" to candidacy, or evidence of unlawful political activity, or using this litigation as grounds for any investigative, disciplinary, or adverse employment action against Plaintiff.

COUNT XIII – FIRST AMENDMENT AND ADMINISTRATIVE PROCEDURE ACT (*Unconstitutional Delegation of Partisan Classification to Private Third Parties and Unlawful Regulatory Expansion of "Partisan Political Office" – As Applied – Federal Defendants*)

242. Plaintiff realleges and incorporates by reference all preceding paragraphs.

Page 51

243. This claim arises under the First Amendment to the United States Constitution and the Administrative Procedure Act, 5 U.S.C. § 706, for the violation of Plaintiff's First Amendment rights and the unlawful regulatory expansion of the Hatch Act's candidacy prohibition through OPM's classification of Nebraska's independent, non-partisan petition track as a "partisan political office" based solely on the voluntary electoral choices of unrelated third-party political organizations; a classification that unconstitutionally delegates to private parties the power to determine whether a federal employee's constitutional right to seek non-partisan office exists.

244. The plain text of 5 U.S.C. § 7323(a)(3) prohibits covered federal employees from being candidates for election to a "partisan political office." The modifier "partisan" is a deliberate limiting term reflecting Congress's recognition that not all political offices are partisan, and that the government's interest in civil service neutrality is not implicated by every form of electoral participation.

245. Under OPM's regulatory implementation at 5 C.F.R. § 734.101, Defendants define a partisan election as any election where "any candidate is nominated or elected as representing a party..." As applied to Plaintiff, Defendants use this blanket regulation to classify Nebraska's independent, petition-based ballot track as "partisan" solely because third-party political entities choose to run candidates in the same general election cycle.

246. Congress expressly confirmed this distinction in 5 U.S.C. § 7322 by creating a safe harbor for federal employees who seek election in non-partisan elections, defined as elections in which no candidate is designated by party affiliation. This safe harbor reflects Congress's deliberate judgment that a federal employee's participation in a genuinely non-partisan electoral process does not implicate the government's interest in an impartial and neutral civil service.

247. However, the definition of "partisan political election" in § 7322 employs an "any candidate" trigger: an election is classified as partisan if any candidate in the race is nominated or elected as representing a political party. Under this interpretation, the partisan character of Plaintiff's candidacy is determined not by anything Plaintiff does, but exclusively by what his opponents do. As applied to congressional elections, where major political parties invariably

Page 52

field candidates, this definitional mechanism renders the non-partisan safe harbor permanently and completely illusory.

248.    The "any candidate" trigger functions as an unconstitutional "third-party veto" over a federal employee's constitutional rights. Under the current interpretation, a federal employee's non-partisan candidacy, entirely lawful at the moment of inception, can be instantaneously rendered a Hatch Act violation by the independent, private decision of a third-party political organization to nominate an opponent.

249.    The First Amendment does not permit the government to extinguish a citizen's constitutional rights based on the independent electoral choices of private third parties, *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 134 (1992). Conditioning the existence of a federal employee's constitutional right to seek non-partisan office on the independent electoral choices of political opponents is incompatible with the First Amendment's guarantee of that right.

250.    Furthermore, the "any candidate" trigger operates retroactively in violation of the Due Process Clause of the Fifth Amendment. A federal employee who relies on the non-partisan safe harbor in good faith, incurs expenditures (as is further detailed in Count VI), and organizes supporters cannot be subjected to legal disability due to a subsequent, independent act by a third party. See *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994).

251.    Plaintiff alleges that this regulatory definition violates the Administrative Procedure Act, 5 U.S.C. § 706, as it is arbitrary, capricious, and exceeds the statutory boundaries set by Congress. Congress explicitly left open a safe harbor for non-partisan electoral participation. By treating the general election ballot as a single undifferentiated partisan environment, classifying every candidate's track as partisan based solely on the presence of any other partisan candidate regardless of the process through which individual candidates qualified, Defendants' regulation unconstitutionally collapses the legal distinction between a partisan nomination process and a pure, non-partisan petition track. A candidate who sought no party nomination, represents no party, and appears on no party's ballot is not a candidate for partisan political office merely because a partisan candidate appears on the same general election ballot.

Page 53

252. Nebraska has exercised its sovereign Elections Clause authority to establish an independent, non-partisan petition track that is non-partisan by design, by legal structure, and by its qualifying requirements. The "any candidate" trigger allows private political parties, by the simple act of fielding their own candidates, to override Nebraska's sovereign designation of that track as non-partisan, effectively granting private organizations the power to determine which state electoral pathways federal employees may access. The "any candidate" trigger violates the Elections Clause of Article I, Section 4. By allowing private political organizations to override those sovereign state determinations via the "any candidate" trigger, the federal government effectively grants private parties veto power over state electoral design.

253. Independently and in the alternative, OPM's implementing regulation at 5 C.F.R. § 734.101, as applied to Plaintiff's independent petition candidacy, must be set aside under 5 U.S.C. § 706(2)(A), (B), and (C) as arbitrary, capricious, contrary to constitutional right, and in excess of statutory authority. Under *Loper Bright Enterprises v. Raimondo*, 603 U.S. ___ (2024), this Court owes no deference to OPM's regulatory interpretation and must independently determine whether classifying Nebraska's independent petition track as a partisan political election correctly implements congressional intent — which, given the permanent nullification of the nonpartisan safe harbor, it does not. OPM's application eliminates the limiting function of 'partisan political office' entirely, rendering the word "partisan" surplusage in violation of the Rule Against Surplusage.

254. Defendants' interpretive pattern reveals a systematic agency practice of reading limiting language out of the Hatch Act's candidacy prohibition. Congress used "partisan" to exclude non-partisan elections, "for election" to exclude pre-candidacy activity, and "candidate" to exclude those who have not yet sought any office. Defendants have rendered all three limiting terms meaningless through regulatory and interpretive expansion.

255. Plaintiff has no adequate remedy at law for the ongoing misclassification of his independent petition candidacy. This misclassification directly and irreparably chills Plaintiff's First Amendment rights, penalizing Plaintiff's non-aligned, independent expression based entirely on the voluntary actions of external, partisan opponents over whom Plaintiff exercises no control. The loss of First Amendment freedoms, including the right to seek federal office

Page 54

through a non-partisan process, constitutes irreparable harm as a matter of law. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

256.    Plaintiff is entitled to a declaration that: (1) the application of 5 U.S.C. § 7322's "any candidate" trigger to classify Plaintiff's independent petition track as a partisan political election, based solely on the voluntary participation of third-party political candidates in the same general election cycle, violates the First Amendment as applied to Plaintiff; (2) 5 C.F.R. § 734.101, as applied to Plaintiff's non-partisan petition candidacy, is arbitrary, capricious, contrary to constitutional right, and in excess of statutory authority under 5 U.S.C. § 706(2)(A), (B), and (C); and (3) Plaintiff's independent petition candidacy for the United States House of Representatives, Nebraska's 2nd Congressional District, does not constitute candidacy for a "partisan political office" within the meaning of 5 U.S.C. § 7323(a)(3); and to an injunction prohibiting Defendants from: (a) treating the "any candidate" trigger of § 7322 as a basis for classifying Plaintiff's independent petition candidacy as candidacy for partisan political office; (b) applying 5 C.F.R. § 734.101 to Plaintiff's non-partisan petition candidacy; and (c) taking any investigative, disciplinary, or adverse employment action against Plaintiff based on his independent petition candidacy or his pre-candidacy exploratory activity in connection therewith for the United States House of Representatives, Nebraska's 2nd Congressional District.

COUNT XIV – FIFTH AMENDMENT
*(VOID FOR VAGUENESS – AS APPLIED – ALL DEFENDANTS)*

257.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

258.    This claim arises under the Due Process Clause of the Fifth Amendment to the United States Constitution for the violation of Plaintiff's constitutional right to clarity and certainty in the law and for the deprivation of liberty and property without due process of law due to the OSC's potential reliance on the unconstitutionally vague "tacit consent" standard of Neb. Rev. Stat. § 32-104 to determine when a federal employee's exploratory political activity constitutes prohibited candidacy under the Hatch Act — a standard that, when imported from

Page 55

Nebraska's state election administration context into the federal Hatch Act enforcement context, fails to provide a person of ordinary intelligence with sufficient clarity to determine whether exploratory political activity has triggered federal employment liability.

259. The Due Process Clause requires that laws provide sufficient clarity and certainty to delineate with precision the boundary between permitted and prohibited conduct, such that a person of ordinary intelligence need not guess at whether their activity triggers federal employment liability. *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972); *Connally v. General Construction Co.*, 269 U.S. 385 (1926).

260. The Nebraska statutory definition of "candidate" (Neb. Rev. Stat. § 32-104), upon which Defendants may rely, includes any person who "either tacitly or expressly, consents to be considered" and is "a registered voter for whom votes may be cast at any election."

261. The term "tacitly" in § 32-104 describes an internal, unobservable mental state, a person's unstated acquiescence to being considered for election. Within Nebraska's election administration context, this standard has defined boundaries: Nebraska officials apply it to specific observable conduct in the context of determining ballot eligibility, a discrete administrative determination with defined procedural protections. But when the OSC imports this standard into federal Hatch Act enforcement, applying it to determine whether a federal employee's exploratory political activity has triggered liability that could result in termination of employment, the standard becomes constitutionally inadequate. A federal employee of ordinary intelligence cannot determine from the "tacit consent" standard, as applied by federal enforcement officials in the federal employment context, at what point their exploratory political activity has crossed into prohibited candidacy. *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972).

262. This constitutional inadequacy is compounded by the interaction between § 32-104's "tacit consent" standard and the OSC's own indeterminate enforcement standards, "preliminaries leading to such announcement" and conduct "reasonably construed" as seeking support. Neither standard alone provides the clarity the Fifth Amendment requires. Together they produce a compounded vagueness in which a federal employee faces potential termination for conduct that simultaneously may constitute "tacit consent" under Nebraska law,

"preliminaries" under the OSC's interpretation, and activity "reasonably construed" as seeking support, three overlapping, mutually reinforcing indeterminate standards none of which provides an objective line between protected exploration and prohibited candidacy.

263.    The phrase "for whom votes may be cast" in § 32-104 presents a similar problem in the federal enforcement context. Within Nebraska's administrative framework, this phrase has operational meaning: Nebraska officials know that votes may be cast for a person only after that person has satisfied the specific prerequisites of §§ 32-606, 32-608, or 32-617. But when the OSC applies this phrase in the federal enforcement context, the phrase's ambiguity becomes constitutionally significant: does "for whom votes may be cast" refer to the theoretical possibility that someone could cast a write-in vote for any registered voter, or does it refer to a person who has satisfied Nebraska's operational prerequisites? The OSC, unlike Nebraska election officials, has no authoritative basis for resolving this ambiguity, and the consequence of resolving it incorrectly is not a ballot access determination but termination of federal employment.

264.    This lack of a clear, objective standard creates a chilling effect on the exercise of Plaintiff's First Amendment rights. Plaintiff must guess whether his non-partisan exploratory political activity, including discussions of potential candidacy, organizational planning, domain name registration, and the filing of this lawsuit, will be interpreted as "tacit" consent to candidacy under § 32-104, thereby triggering Hatch Act enforcement liability. Because Plaintiff cannot know whether any specific act of exploration crosses the line into tacit consent, he must refrain from all such activity to avoid the risk of termination; which is itself the constitutional harm the Fifth Amendment's void for vagueness doctrine is designed to prevent.

265.    Plaintiff has no adequate remedy at law for the ongoing constitutional uncertainty created by the OSC's potential reliance on § 32-104's "tacit consent" standard. The daily suppression of Plaintiff's exploratory political activity, caused by the inability to determine whether any specific act of exploration constitutes "tacit consent" triggering Hatch Act enforcement, constitutes irreparable harm for which retrospective relief cannot compensate. The loss of constitutional freedoms caused by this compounded vagueness, even for minimal periods of

Page 57

time, constitutes irreparable harm as a matter of law. Elrod v. Burns, 427 U.S. 347, 373 (1976).

266. Plaintiff is entitled to: (1) a declaration that the OSC's potential reliance on the "tacit consent" standard of Neb. Rev. Stat. § 32-104 to determine when a federal employee's exploratory political activity constitutes prohibited candidacy under the Hatch Act violates the Fifth Amendment's Due Process Clause because that standard, when imported from its state administrative context into the federal employment enforcement context, fails to provide the clarity and certainty necessary to give fair warning of what conduct triggers federal employment liability; and (2) an injunction prohibiting Defendants from relying on the "tacit consent" standard of § 32-104 or the phrase "for whom votes may be cast" in § 32-104 to characterize Plaintiff's exploratory political activity as prohibited candidacy under the Hatch Act, except to the extent Plaintiff has satisfied the operational prerequisites of Neb. Rev. Stat. §§ 32-606, 32-608, or 32-617.

COUNT XV – FIFTH AMENDMENT AND FIRST AMENDMENT (*UNCONSTITUTIONAL IRREBUTTABLE PRESUMPTION / AS-APPLIED CHALLENGE TO CANDIDACY PROHIBITION – FEDERAL DEFENDANTS*)

267. Plaintiff realleges and incorporates by reference all preceding paragraphs.

268. This claim arises under the Due Process Clause of the Fifth Amendment and the First Amendment to the United States Constitution for the violation of Plaintiff's constitutional rights through the enforcement of an irrebuttable presumption — that any federal employee who seeks elective office necessarily threatens civil service neutrality — without any individualized determination that Plaintiff's candidacy poses an actual or imminent threat to any legitimate governmental interest, and without affording Plaintiff any opportunity to rebut that presumption by demonstrating the strictly limited and non-coercive nature of his federal duties.

269. The Hatch Act's prohibition against becoming "a candidate for election to a partisan political office," 5 U.S.C. § 7323(a)(3), as interpreted and enforced by Defendants, rests upon a conclusive and irrebuttable presumption that any federal employee who seeks elective office

Page 58

necessarily threatens the neutrality, efficiency, integrity, or public confidence of the civil service.

270.    When originally enacted in 1939, the Hatch Act addressed widespread concerns regarding political patronage, coercion, misuse of governmental authority, and partisan influence within the federal workforce.  At that time, Congress adopted broad prophylactic restrictions designed to prevent such abuses before they occurred.

271.    The Supreme Court's decisions upholding the Hatch Act in *United Public Workers v. Mitchell* and *Civil Service Commission v. Letter Carriers* were predicated upon those historical circumstances and the government's asserted need to prevent coercion, favoritism, abuse of authority, and the appearance of partisan governmental administration.

272.    Since those decisions, Congress has substantially amended the Hatch Act, including through the Hatch Act Reform Amendments of 1993 and subsequent amendments, to permit most federal employees to engage in active political management, campaign activity, political association, political expression, and participation in the electoral process while off duty.

273.    Modern federal employment is additionally subject to extensive oversight through Inspectors General, the Office of Special Counsel, the Merit Systems Protection Board, ethics regulations, whistleblower protections, anti-coercion provisions, and numerous statutes and regulations specifically addressing misconduct, abuse of authority, and partisan misuse of governmental resources.

274.    As a result of these legislative and institutional developments, candidacy itself no longer serves as a reasonable proxy for misconduct, coercion, favoritism, abuse of authority, or impairment of governmental operations.

275.    Nevertheless, Defendants continue to enforce § 7323(a)(3) as a categorical prohibition based solely upon the status of candidacy, without requiring any showing that the particular employee's candidacy poses an actual or imminent threat to the government's legitimate interests.

Page 59

276. Plaintiff is a non-supervisory, non-policymaking letter carrier employed by the United States Postal Service.

277. Plaintiff possesses no authority to hire, fire, discipline, promote, transfer, reward, evaluate, or supervise other employees.

278. Plaintiff possesses no authority to establish governmental policy, direct governmental resources, award contracts, administer programs, or exercise discretionary governmental power.

279. Plaintiff's duties are limited to the delivery of mail along a single postal route.

280. Defendants have made no individualized determination that Plaintiff's prospective candidacy would impair the efficiency of the Postal Service, interfere with governmental operations, create coercive pressures upon subordinates, undermine public confidence in governmental neutrality, or otherwise threaten any legitimate governmental interest.

281. Nor have Defendants identified any plausible mechanism by which Plaintiff, acting as a letter carrier serving a single postal route, could improperly influence a congressional election expected to involve hundreds of thousands of votes.

282. Instead, Defendants presume that Plaintiff's candidacy is prohibited solely because he seeks elective office while remaining employed.

283. Plaintiff is afforded no opportunity to rebut this presumption by demonstrating the limited nature of his duties, the absence of supervisory authority, the absence of policymaking authority, the absence of any realistic opportunity to influence election outcomes, or the availability of less restrictive means to protect governmental interests.

284. By imposing a categorical prohibition based solely upon status and by refusing to permit any individualized assessment of actual governmental interests, Defendants enforce an irrebuttable presumption that is not narrowly tailored to any compelling governmental interest.

Page 60

285.   Less restrictive alternatives exist, including enforcement of existing prohibitions against coercion, misuse of authority, solicitation of political contributions, partisan activity while on duty, misuse of governmental resources, and other forms of actual misconduct.

286.   As applied to Plaintiff, Defendants' enforcement of § 7323(a)(3) violates the Due Process Clause of the Fifth Amendment and impermissibly burdens Plaintiff's rights of political speech, political association, and candidacy protected by the First Amendment.

287.   Plaintiff has no adequate remedy at law.

288.   The loss of constitutional freedoms, even for minimal periods of time, constitutes irreparable harm.

289.   Plaintiff is entitled to a declaration that the enforcement of 5 U.S.C. § 7323(a)(3) against Plaintiff, based solely on his status as a federal employee seeking elective office and without any individualized determination that his candidacy poses an actual or imminent threat to any legitimate governmental interest, violates the Due Process Clause of the Fifth Amendment by enforcing an irrebuttable presumption that is factually inapplicable to Plaintiff's strictly limited, non-supervisory, non-policymaking position; and to an injunction prohibiting Defendants from enforcing § 7323(a)(3) against Plaintiff absent an individualized showing — with opportunity for Plaintiff to be heard — that Plaintiff's specific candidacy presents a genuine and substantial threat to a legitimate governmental interest that cannot be adequately addressed through existing conduct-based prohibitions and enforcement mechanisms.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Todd Heyne respectfully requests that this Court enter judgment in his favor and against Defendants, granting the following relief:

Page 61

## I. Declaratory Relief

### A. First Amendment (As-Applied)

Declare, pursuant to 28 U.S.C. § 2201, that Defendants' interpretation and enforcement of the Hatch Act against Plaintiff's off-duty, privately conducted, non-coercive, exploratory, and petition-related political activity violates the First Amendment to the United States Constitution as applied to Plaintiff.

### B. Protected Petition Activity

Declare that Plaintiff's circulation of petitions for ballot access pursuant to Neb. Rev. Stat. § 32-617, including related exploratory political activity and the maintenance of passive digital infrastructure — specifically todd4congress.com, toddforcongress.com, and todd@toddforcongress.com — all occurring prior to formal qualification as a "candidate for election" under applicable state law, constitutes protected speech, association, and petitioning activity under the First Amendment, and that such activity does not constitute prohibited candidacy-related conduct under the Hatch Act.

### C. Vagueness (Fifth Amendment)

Declare that Defendants' interpretation and enforcement of the Hatch Act, and its implementing regulations at 5 C.F.R. Part 734, as interpreted and enforced by Defendants through standards including "preliminaries leading to such announcement" and conduct that may be "reasonably construed" as seeking support for election, are unconstitutionally vague as applied to Plaintiff under the Fifth Amendment's Due Process Clause because they fail to delineate with sufficient precision the boundary between permitted political activity and prohibited candidacy-related conduct, thereby failing to provide the clarity and certainty the Due Process Clause of the Fifth Amendment requires.

### D. Unconstitutional Conditions

Declare that conditioning Plaintiff's continued federal employment upon the total relinquishment of his fundamental constitutional right to seek public office through Nebraska's independent, non-partisan petition track violates the Unconstitutional Conditions Doctrine under the Fifth

Page 62

Amendment's Due Process Clause as applied to non-supervisory, non-policymaking federal employees who lack the capacity to exert coercive or partisan influence, as the government may not deny a benefit to a person on a basis that infringes his constitutionally protected interests.

### E. Overbreadth and Facial Challenge

Declare that the Hatch Act, 5 U.S.C. § 7323(a)(3), and its implementing regulations are unconstitutional on their face because, as interpreted and enforced by Defendants, they prohibit and chill a substantial amount of protected pre-candidacy political speech and association relative to their legitimate sweep, including by sweeping independent pre-candidacy political activity within their prohibitions.

### F. Equal Protection/Due Process

Declare that the OSC's interpretation and enforcement of the Hatch Act violates the Elections Clause of Article I, Section 4 by displacing Nebraska's constitutionally sanctioned authority to define the legal prerequisites for "candidate for election" status in congressional elections; violates the equal protection component of the Fifth Amendment's Due Process Clause by: (1) creating an irrational classification that contradicts the objective candidacy determination made by the constitutionally designated authority — the State of Nebraska; (2) rendering the statutory phrase "for election" mere surplusage in violation of fundamental canons of statutory construction; and (3) arbitrarily and disparately burdening non-policymaking federal employees who lack the independent financial means to resign in advance of ballot-access deadlines; and further violates the Fifth Amendment's Due Process Clause by rendering the statutory safe harbor for political management activity illusory through the application of standards that fail to provide sufficient clarity and certainty to delineate the boundary between permitted and prohibited conduct.

### G. Wealth Barrier and Expenditures

Declare that Defendants' treatment of pre-candidacy exploratory expenditures as prima facie evidence of prohibited candidacy under the Hatch Act creates an unconstitutional wealth-based barrier to political participation in violation of the First and Fifth Amendments, and that the filing of and prosecution of a constitutional lawsuit to protect Plaintiff's rights does not constitute a pro-

Page 63

hibited Hatch Act expenditure or unlawful political activity.  Specifically, Plaintiff's total expenditure of $38.26 for the registration of domain names todd4congress.com and toddforcongress.com and the email address (todd@toddforcongress.com) currently parked and dormant, with no active campaign content published, no solicitation of support or contributions, and no campaign-related communications sent or received; and, the costs associated with the filing of this lawsuit and its prosecution, does not constitute a prohibited political expenditure or evidence of unlawful candidacy under the Hatch Act, 5 U.S.C. § 7323(a)(3), or its implementing regulations.

### H. Qualifications Clause

Declare that Defendants' interpretation and enforcement of the Hatch Act, as applied to Plaintiff, impermissibly imposes an additional qualification for service in the United States House of Representatives — namely, that a candidate must "Not Be A Federal Government Employee"— beyond those exclusively enumerated in Article I, Section 2, Clause 2 of the United States Constitution, in violation of the holding of *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 827 (1995).

### I. Statutory Construction & Administrative Overreach (APA)

Declare that, under Loper Bright Enterprises v. Raimondo, 603 U.S. ___ (2024), this Court owes no deference to Defendants' interpretation and enforcement of the Hatch Act, and that such interpretation and enforcement, including the regulatory definition at 5 C.F.R. § 734.101 extending "partisan political office" to encompass Nebraska's independent petition track based solely on the voluntary actions of third-party political entities, and all related advisory guidance, exceed statutory authority, are contrary to constitutional right, and are arbitrary, capricious, and otherwise not in accordance with law pursuant to 5 U.S.C. § 706.

### J. State Defendant Deadline Barriers

Declare that Neb. Rev. Stat. § 32-616, as applied to Plaintiff, violates the First Amendment and the Equal Protection and Due Process Clauses of the Fourteenth Amendment by imposing arbi-

Page 64

trary, discriminatory distinctions between independent petition candidates and partisan candidates based solely on party affiliation status as of March 1, and by foreclosing the only viable pathway to ballot access available to Plaintiff without justification by a compelling state interest.

## K. State Due Process Vagueness (Catch-22)

Declare that Neb. Rev. Stat. § 32-616, as applied to Plaintiff under the circumstances described herein, violates the Due Process Clause of the Fourteenth Amendment by: (1) providing zero notice to non-policymaking federal employees regarding how to satisfy the March 1 party-disaffiliation deadline while simultaneously complying with the Hatch Act as interpreted by the OSC, producing an indeterminate and unconstitutional Catch-22; there being no compliance pathway identified in any applicable law, regulation, or guidance; and (2) operating in a manner so vague and indeterminate as applied to this class of citizens that it fails to provide the clarity and certainty the Due Process Clause requires.

## L. Joint Systemic Barrier (Anderson-Burdick)

Declare that the combined, overlapping enforcement of the Hatch Act by the Federal Defendants and Neb. Rev. Stat. § 32-616 by the State Defendant creates an unconstitutional, insurmountable barrier to ballot access under the balancing framework established in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992), that categorically excludes non-policymaking federal employees from the electoral process regardless of their diligence or intent, and effectively imposes an extra-constitutional qualification for federal office not found in the United States Constitution.

## M. State Law Importation Vagueness

Declare that the OSC's potential reliance on the "tacit consent" standard of Neb. Rev. Stat. § 32-104 to determine when a federal employee's exploratory political activity constitutes prohibited candidacy under the Hatch Act violates the Fifth Amendment's Due Process Clause because that standard, when imported from its state administrative context into the federal employment enforcement context, fails to provide the clarity and certainty necessary to give fair warning of what conduct triggers federal employment liability.

Page 65

## N. Lawsuit Protection

Declare that the filing and prosecution of a constitutional lawsuit to protect Plaintiff's rights does not constitute a prohibited Hatch Act expenditure, a prohibited "preliminary" to candidacy, or evidence of unlawful political activity under the Hatch Act or its implementing regulations.

## O. Irrebuttable Presumption

Declare that the enforcement of 5 U.S.C. § 7323(a)(3) against Plaintiff, based solely on his status as a federal employee seeking elective office and without any individualized determination that his specific candidacy poses an actual or imminent threat to any legitimate governmental interest, violates the Due Process Clause of the Fifth Amendment by enforcing an irrebuttable presumption that is factually inapplicable to a non-supervisory, non-policymaking letter carrier whose duties are limited to mail delivery along a single rural postal route.

## P. Right to Petition — Ballot Petition Circulation:

Declare that the circulation of ballot-access petitions pursuant to Neb. Rev. Stat. § 32-617, including all preparatory and exploratory steps necessary to initiate that process, constitutes protected petitioning activity under the First Amendment that may not be prohibited or penalized by the Hatch Act or its implementing regulations.

## Q. Engaging in Political Management or in Political Campaigns

Declare that Plaintiff's engagement in political management activities and the management of his own political campaign — including public discussion of potential candidacy, dissemination of platform information, solicitation of ballot-access petition signatures, maintenance and operation of a campaign website, engagement with voters through in-person and online communications, and expenditures made in connection with such activities — all occurring off-duty, without use of official authority or government resources, and prior to Plaintiff's formal qualification as a "candidate for election" under applicable state law, constitutes the exercise of the right to take an "active part in political management or in political campaigns" expressly permitted by 5 U.S.C. § 7323(a) as amended by the Hatch Act Reform Amendments of 1993, and does not constitute prohibited candidacy under 5 U.S.C. § 7323(a)(3).

Page 66

## II. Administrative Procedure Act Relief

Pursuant to 5 U.S.C. § 706, hold unlawful and set aside Defendants' interpretation of the Hatch Act, as reflected in 5 C.F.R. Part 734 and related advisory guidance, to the extent it: (1) extends prohibitions to preliminary, exploratory, or pre-candidacy political activity occurring prior to formal qualification as a "candidate for election" under applicable state and federal law; (2) classifies Nebraska's independent, non-partisan petition track as a "partisan political office" based on the voluntary electoral participation of third-party political entities; and (3) otherwise impermissibly burdens protected speech, association, and petitioning activity contrary to constitutional right.

## III. Injunctive Relief

### A. Permanent Injunction Against Federal Defendants

Preliminarily and permanently enjoin the Federal Defendants, their officers, agents, employees, successors, and all persons acting in concert with them from investigating, disciplining, threatening, or otherwise enforcing the Hatch Act or its implementing regulations against Plaintiff based upon the conduct described herein, including:

1. exploratory political activity conducted off-duty and without use of official authority or government resources;

2. circulation of ballot-access petitions pursuant to Neb. Rev. Stat. § 32-617;

3. private political discussions or organizational planning activities;

4. expenditures made in connection with exploratory or pre-candidacy political activity;

5. litigation undertaken to protect Plaintiff's constitutional rights; and

6. candidacy-related activity conducted while Plaintiff is off-duty and/or while on leave-without-pay or extended leave status upon formally qualifying as a candidate for election under applicable law;

Page 67

7. independent petition candidacy for the United States House of Representatives, Nebraska's 2nd Congressional District, including treating Nebraska's independent petition track as a partisan political office under the "any candidate" trigger of 5 U.S.C. § 7322.

## B. Prohibition of Broad Interpretations

Enjoin Federal Defendants from enforcing any interpretation of "candidate" or "candidate for election" that extends beyond the achievement of formal candidate status under objective Nebraska law thresholds (Neb. Rev. Stat. §§ 32-606, 32-608, and 32-617), and specifically prohibit reliance on the subjective "tacit consent" standard or the phrase "for whom votes may be cast" found in § 32-104.

## C. Permanent Injunction Against State Defendant

Preliminarily and permanently enjoin Defendant Evnen, his officers, agents, employees, successors, and all persons acting in concert with him from enforcing the March 1 disaffiliation deadline of Neb. Rev. Stat. § 32-616 against Plaintiff under the circumstances described herein.

## D. Ballot Access Relief and Equitable Tolling Relief

Order Defendant Evnen to permit Plaintiff to pursue ballot access as a petition candidate, including immediate approval of Plaintiff's petition forms and equitable tolling of any filing deadlines adversely affected by Defendants' enforcement actions, the joint systemic barrier described herein, or the pendency of this litigation.

## E. Tacit Consent Standard

Enjoin Defendants from relying on the 'tacit consent' standard of § 32-104 or the phrase 'for whom votes may be cast' in § 32-104 to characterize Plaintiff's exploratory political activity as prohibited candidacy under the Hatch Act, except to the extent Plaintiff has satisfied the operational prerequisites of Neb. Rev. Stat. §§ 32-606, 32-608, or 32-617.

Page 68

## F. Individualized Assessment

Enjoin Defendants from enforcing 5 U.S.C. § 7323(a)(3) against Plaintiff absent an individualized showing — with opportunity for Plaintiff to be heard — that Plaintiff's specific candidacy presents a genuine and substantial threat to a legitimate governmental interest that cannot be adequately addressed through existing conduct-based prohibitions and enforcement mechanisms.

## G. Political Management and Managing a Campaign

Enjoin Defendants from treating Plaintiff's off-duty political management activities — including public discussion of potential candidacy, dissemination of platform information, solicitation of ballot-access petition signatures, maintenance and operation of a campaign website, and engagement with voters through in-person and online communications — as prohibited candidacy-related conduct under the Hatch Act, to the extent such activities occur prior to Plaintiff's formal qualification as a "candidate for election" under applicable state law and do not involve the use of official authority, government resources, or conduct otherwise prohibited by 5 U.S.C. § 7323(a)(1), (2), or (4).

## H. Federal Safe Harbor

Direct the Federal Defendants to provide a safe harbor from Hatch Act enforcement for Plaintiff's petition-related activities conducted in compliance with Nebraska's ballot access requirements under Neb. Rev. Stat. § 32-617, pending final resolution of this action.

## IV. Expedited Relief and General Relief

### A. Expedited Consideration

Grant expedited consideration of this matter in light of impending election and ballot-access deadlines, including the August 1, 2026 petition submission deadline, and the ongoing irreparable deprivation of Plaintiff's constitutional rights.

### B. Costs and Fees

Award Plaintiff costs, expenses, and attorney's fees to the extent permitted by law, including pursuant to 42 U.S.C. § 1988.

Page 69

## C. Further Relief

Grant such other and further relief as the Court deems just and proper.


Respectfully submitted,


Todd Michael Heyne
6602 N 114th Ave
Omaha, NE 68164
402-999-6591
Plaintiff, pro se


DATED: This 9th day of June, 2026

Page 70